WILLIAM FISHER, Appellee,
*against*
BENJAMIN BROWN, Appellant.

*BENJAMIN BROWN* was attached to answer unto *William Fisher*, in a plea of the case for this, to wit:

That whereas, on the 7th day of *February*, 1798, at *Orwell*, in the County of *Rutland*, he the plaintiff was lawfully possessed of a certain bay horse; and that, at the time and place aforesaid, the defendant applied to and solicited the plaintiff to sell to him the said horse; and did then and there faithfully promise and engage to the plaintiff, that he the defendant was a man of property, and was the owner of a hundred acre lot or farm of land in *Cornwall*, in the County of *Addison*, adjoining to Mr. *Sperry's* farm in *Cornwall*, meaning and intending, as the plaintiff avers, *David Sperry's* farm in *Cornwall*; and that Mr. *Sperry*, meaning and intending the said *David Sperry*, was indebted to him the defendant in a large sum of money, to wit, the sum of thirty dollars, which he

*An action of deceit will not lie against a purchaser who makes false affirmations in his own favour in order to obtain a day of payment.*

the defendant would collect and pay to the plaintiff in part payment for said horse. And the plaintiff says, that he relying on the affirmations, promises and undertakings of the defendant so made as aforesaid, and at the special instance and request of the defendant, bargained and sold to him the said horse at and for a large price, to wit, the price of 63 dols. 33 cts. no part of which sum or price was paid by the defendant to the plaintiff; but the plaintiff, being deceived by and relying upon the false, fraudulent, subtle and deceitful representations and promises of him the defendant, made and entered into by the defendant with a subtle and crafty intent to deceive, injure and defraud the plaintiff, he the plaintiff took and received of the defendant his the defendant's promissory note for the aforesaid sum of 63 dols. 33 cts. which said note is not yet due, and payable; and the plaintiff in fact says, that the defendant his promises and undertakings aforesaid not regarding, but contriving and fraudulently intending craftily and subtlely to deceive and defraud the plaintiff in this behalf, at the time of making and entering into the promises and undertakings aforesaid, was not the owner of any hundred acre lot or farm of land in *Cornwall* aforesaid; nor was the said *Sperry*, of *Cornwall*, indebted to the defendant in the said sum of thirty dollars, or any part thereof. By reason whereof the plaintiff says he is injured, and hath been damaged to the amount of one hundred dollars, to recover which, with just costs, he brings suit, &c.

To this declaration defendant demurred generally.

*Daniel Chipman.* The plaintiff declares in sub-stance, that he owned a horse; that the defendant set himself up as a man of property, in this especially, that he owned a farm near one *Sperry's,* in *Cornwall,* and that *Sperry* owed him thirty dollars, which should apply in part payment for the horse; that relying on these professions, the plaintiff vended his horse, took the defendant's promissory note for the price payable at a future day not yet come, and then traverses the defendant's affirmations, and demands a sum in da-mages.

The case is new in precedent, and novel in prin-ciple. No case is to be found in the books, where an action lies against a purchaser for mere naked though false professions in his own favour, made to obtain credit. But although no precedent can be found, if there be a principle of law which will sus-tain this action, we will readily abandon the defence. But we contend that it is new in principle.

The subjects of the municipal law are men, not angels; *men,* with all the mental powers, and all the infirmities incident to human nature. When the buyer and seller contract, the law considers them *as such,* expects from them that they should exercise that portion of reason and discretion which men in the common enjoyment of their mental powers usual-ly possess, and allows a liberal indulgence to those deviations from the strict rules of moral rectitude which men are excited to by a present, personal and prevailing interest. The law expects that the vendor will praise his goods, and thus endeavour to recom-mend them to the purchaser; that he will demand a high price, though he knows from private informa-

tion, that the article he proposes to sell has suddenly fell in the market. On the other hand, the law expects that the buyer will cry *nought*, and endeavour to beat down the price, though he knows that the article he is about to purchase is of greater value than what even the owner put upon it, occasioned by its sudden rise in the market, unknown to the vendor; that if the purchaser wants a credit, he will magnify his own property and endeavour to gain the confidence of the seller by the strongest assertions of his ability to fulfil his contract. The conduct of either cannot be squared by the rule of moral rectitude, but the law in such cases refers them to their own reason and discretion, that they must by circumspection and inquiry guard against such imposition, and that the only impositions in contracts from which the law will protect either are such as common prudence cannot guard against.

If this were not so, perhaps there is not a bargain made that might not be the subject of a law-suit. Some advantage is generally gained by one of the contracting parties; and if the courts of law will sit to consider all the glosses given by parties in maturing a contract, and assess damages for every deviation from truth, it would be putting the whole community under guardianship, and avoiding their contracts upon the same principle as we now avoid the contracts of the infant, the idiot and the insane. To shew that the law refers contracting parties to their own discretion and vigilance, and will not render redress for certain impositions, which might have been avoided by the exercise of common discretion, we shall cite a few instances from *Comyns' Digest*,

vol. 1. p. 242. E. 4. under the general head of action upon the case for a deceit.

This action does not lie against him who sells without warranty, if the thing sold had a visible malady, which the vendee had an opportunity of discovering; as if a man sell a horse which he knew to be lame, or that had splint, spavin, &c. which the vendor might perceive by inspection.

So, if a man sell corrupted wine, if the vendee or his servant taste and approve of it.

If he sell land to which he had not a good title, when he does not offer it to sale, but the other proffers himself to be a purchaser.

Nor does it lie, though the vendor affirm falsely of the value; as if he affirm, that lands or jewels are of so much value, when they are not.

So, if he affirm falsely of his right, when another has the possession.

So, if he affirm that he was offered so much by *A.* for the thing sold when he was not.

Why should not the action lie in these cases? Because the purchaser had neglected to exercise common prudence and discretion. In *Buller's Nisi Prius*, p. 31. it is laid down upon the authority of *Salkeld*, 210. that if the seller were out of possession of the personal chattel at the time of the sale, no action will lie against him, though it be not his own, without an express warranty. Whence the distinction between a chattel in and out of the vendor's possession, but because possession is such an acknowledged evidence of property in acceptance of law, that the purchaser might rationally conclude that the property was in the vendor? Common discretion

could not guard against an imposition of this nature; but if the property is not in the possession of the vendor, no action for deceit will lie against him, though he affirms ever so solemnly *those things* which might lead the purchaser to credit that he owned it; because the purchaser in such case, in the exercise of common discretion, should have sought inquiry of him who had the property actually in possession.

In the present case, if my client boasted of property not in his possesion; if he bragged of owning a farm, and having a note due to him for thirty or thirty thousand dollars; the plaintiff, in the exercise of common discretion, should have placed no reliance upon these vauntings, or, if he intended to rely upon them as an inducement to give a day of payment, he should have been discreet enough to have made inquiry into the truth of them.

A distinction is however to be taken between false affirmations made in favour of another to obtain credit for him, and false affirmations made in a party's own favour.  In the first instance a man is justly chargeable, because he who is injured could not be guarded by common precaution against such affirmations, and the law makes no allowance on account of the personal interest of the affirmant; but in the latter instance, the party who listens to a false affirmation made by a person in his own favour, is naturally put upon his guard, and must rely for protection from imposition, upon his own sagacity, or the information of others.

There is another distinction between false affirmations made by a party in his own favour, and *false tokens.* Upon the same principle, an action upon the

case for deceit will not lie in favour of him who is
imposed upon by the former, but will lie in favour of
him who is imposed upon by the latter.

We make these distinctions because we anticipate
that some cases may be produced from the books
which may seem to bear on the point in question;
but upon investigation they will be found to apply
only to cases of false affirmation made in favour of
another, and false affirmation accompanied with false
tokens.

But we have another exception in demurrer, which
goes also to the right.of action.

It appears by the declaration, that the plaintiff took
a promissory note of the defendant, and in lieu of re-
ceiving the price of the horse in hand, or taking the
note on demand, gave a day of payment, which has
not yet come.   We contend that the taking of the
note extinguished any equitable and present demand
which the plaintiff might have had for the price of the
horse.   If the present action prevails, what is to be-
come of the promissory note?

In all actions for deceit there must be *damnum et
injuria;* but the declaration alleges no especial in-
jury.   If the plaintiff prevail, what is to be the mea-
sure of damages?   Must they not be computed by
the *fears* of the plaintiff; and if his apprehensions
should prove to be ill-grounded, and the defendant
should tender the full amount of the note on the day
of payment, no injury would certainly be received by
the plaintiff.

If the doctrine be correct, that when a vendor gives
a day of payment, and reduces the contract to wri-
ting, and afterwards discovers that he has put too

50

Fisher
v.
Brown.

great reliance upon the ability of his debtor, that he shall have a right to avoid the contract, and rely on recovering the value of the property vended, and not stop here, but bring a suit for damages, grounded on the traverse of some assertion of the purchaser hastily and thoughtlessly made before the conclusion of the contract, this would do away all the assurance and safety of written contracts.

The time of payment is often a weighty consideration in a purchase. If I am to pay in hand, or am offered a short credit, I cannot trade; but if I may have six or twelve months, I may prudently purchase. But if, after I have reduced the contract to writing, I am liable to be saddled with a law-suit, at the caprice or from the apprehensions of my creditor, or because he may learn that I was not quite so wealthy as I had represented myself, all credit and all confidence in written contracts must be at an end.

Therefore, in every view of the subject, we contend that the declaration is insufficient.

If the plaintiff has conducted himself immorally in boastings to obtain credit, as Lord *Kenyon* observed in the case of *Pasley* v. *Freeman*, " it is not every moral and social duty, the neglect of which is the ground of an action." The plaintiff contracted to take a promissory note, and give a day of payment for the price of the horse, and he must rely on that contract, for it cannot be avoided by any false affirmations made by the defendant in his own favour to accelerate the contract, unless he sets forth and shews some special injury sustained as the direct consequence of such false professions.

*Durnf. & East,*
vol. 3. p. 63.

If, however, the present action is not new in pre- <span style="float:right">Fisher<br>v.<br>Brown.</span> cedent and principle, we shall rest until we see it shewn by the plaintiff's counsel.

*Seth Storrs, contra.* The defendant takes two exceptions in demurrer, both going to the right of action.

First. That an action in the nature of deceit will not lie for any false assertion, however fraudulently intended, which a man makes in favour of himself, by which he induces another to give him credit.

Secondly. That when a promissory note is taken for the price of a chattel sold, the vendor, though he may have been grossly deceived by the false and fraudulent affirmations of the purchaser, cannot sustain an action of deceit, but must rely solely upon his note, and wait until the day of payment mentioned in the note before he brings his action.

We consider the present declaration sufficient, that the action is neither new in principle or precedent.

The general rule of law may be found in *Comyns' Digest*, vol. 1. p. 230. " An action upon the case for a deceit lies when a man does *any* deceit to *the damage of another.*"

Lord *Kenyon*, in rendering judgment in the case of *Pasley and another against Freeman, Durnford &* *East*, vol. 3. p. 64. after quoting this rule, observed, " that he found it laid down by Chief Baron *Comyns*, that it was true he had not cited any authority for this opinion, but his (the Chief Baron's) opinion was of great authority, since he was considered by his cotemporaries as the most able lawyer in *Westminster* Hall."

Fisher
v.
Brown.

In that case, though not strictly in point with the present, we find it decided, that a false affirmation made by the defendant with intent to defraud the plaintiff, whereby the plaintiff receives damage, is the ground of an action upon the case in the nature of deceit, even where the defendant had no interest in the deceit, or had colluded with another who had.

And wherever we find a false affirmation with an intent to defraud, and damages consequentially received, there this action well lies.

Therefore we find in *Comyns' Digest*, vol. 1. p. 236. which author, as our opponent has cited to shew where the action will not lie, we shall cite to shew where it will.

If a man by a false affirmation of a thing within his knowledge deceive in the sale of goods, as if a taverner sell wine for sound and good which he knows to be corrupt. 1 *Roll.* 90. 1. 30. 2 *Roll. 5.*

So, if the seller say that they are the goods of *A.* which he has authority to sell, when they are the goods of another, though it is not averred that he knew them to be the goods of a stranger. 1 *Roll.* 91. 1. 5.

So, if he sell a horse, *affirming him to have been his horse from a colt*, when he was not. 1 *Roll.* 91. 1. 10.

So, if a man by a false affirmance of a thing within his knowledge, *procure a fact to be done which otherwise would not be done*. Ibid. p. 237. A. 10.

So, if a woman give a man *blanda verba æquipollentia* to a promise of marriage, whereby she obtains from him presents and other services. *Cro. Eliz.* 79.

We consider the principle which governed all these decisions, to be the same on which we now rely,

To wit, that there had been false affirmations made with intent to defraud, and damages had ensued.

That the defendant made false affirmations in the present case, is confessed by the demurrer. Were they not with an intent to defraud? It is obvious they were made to induce the plaintiff to part with his property on credit, which he would not otherwise have done.

Has there not been damage and injury sustained by the plaintiff? It is said we have alleged no especial injury in the declaration. The rule of law is, where the facts set forth in a declaration shew *prima facie* an injury, none need especially to be set forth. So, in an action for slanderous words, to say of a man he is a thief or a murderer, that he robbed *A.* on the highway, or ravished *B. carnaliter*, no *per quod* is necessary. And why? Because, as in the present case, the common perception of mankind sees in the facts stated, that if true there has been an injury sustained.

It is said the action will not lie for these false affirmations, because these were mere *blandæ verbæ* used in maturing the contract: but we read, that when a man falsely affirmed that he owned a horse from a colt, the action lay; and that case is not so strong as the present.

It is said that the exercise of common discretion would have guarded the plaintiff against imposition, and therefore the action will not lie; but in the cases cited, and many others familiar to the profession in

the books, common discretion and vigilance, it would seem, might have guarded the purchaser as securely as in the present case; at least in all the cases excepting that quoted by *Comyns* from *Cro. Eliz.* 79. for it is notorious, that when a man goes abroad to effect a contract of that delicate nature, he generally leaves his discretion at home.

It is also said, that no action for deceit, grounded on false affirmations made in a man's own favour, will lie, but that the cases in the books are upon false affirmations made in favour of another, or accompanied with false tokens.

But this goes abreast of the doctrine just read. "If a man by a false affirmation of a thing within his knowledge procure a fact to be done, the action lies."

This is our case. The defendant falsely affirmed respecting his own property, *and procured a fact to be done*, that is, he obtained credit, and a long day of payment by it.

Indeed it is very difficult to distinguish either as to the immorality or the injury between a lie told to obtain credit for another, or a falsehood affirmed to procure a day of payment for the liar himself. If there is any distinction in morals, a lie told in a man's own favour, to further his own immediate interest, is of a baser nature than that told disinterestedly in favour of a third person. But the effect and injury are the same. It can be of no import to me whether I am induced to part with my property upon a long and doubtful credit to the liar himself, or to another concerning whom he has lied, or whether I have been deceived by false tokens or false speeches.

But it is objected, that we are precluded from any action until the day of payment arrives, and demand is made upon the note.

We shall shew, that where any security for money is made, or any other act is procured to be done by false affirmations made with intent to defraud, upon the discovery of the fraud, the transactions which were produced by them are considered as null in law, and the party injured may have action for the deceit, or resort to those rights which he only ostensibly parted with, and seek his original remedy in the same manner as if such fraud had not been practised.

The case of *Hogan* v. *Shee, Espinasse's Cases at Nisi Prius*, vol. 2. p. 522, 523. was an action of *assumpsit* for money had and received, plea of *non assumpsit*, and was brought to recover a sum of 100*l.* which had been given by the defendant to the plaintiff as a consideration for the defendant's procuring for his brother the place of a cadet in the service of the *East-India* Company, which he had undertaken to do.

*Day's* edit. p. 521.

The defendant had given a note by which he promised to repay that sum within three months, in case he did not procure the place within the time limited.

The plaintiff having discovered the deception, brought his action *immediately*, without waiting for the three months to be expired.

The objection to the action was, that it was not maintainable till after the three months were expired.

Lord *Kenyon* ruled, that *it was then maintainable*, and said he had ruled so on other occasions in the case of goods sold on credit; in which case, if it appeared that there had been any fraud on the part of

the buyer, though the time of credit was not ex-
pired, he was of opinion that the party might consi-
der *the credit as void,* and proceed immediately for
the recovery of the money. The plaintiff had a
verdict.

*Day's* edit. p.
428.

In the case of *De Symons* v. *Minchwich,* same re-
porter and volume, p. 430, 431. one part of the de-
fence was, that the action was brought before the
time given for credit was expired. *Eyre,* Chief Jus-
tice, observed, " that if the defendant meant *to im-
pose on* or defraud the vendor of his goods, the de-
fence will not avail. But those are circumstances
for the consideration of the Jury only, to whom he
left it." The Jury (which was a special one) found a
verdict for the defendant.

Lord *Kenyon's* opinion, which was supported by
all the Judges present, in the case of *Puckford* v.
*Maxwell, Durnford & East,* vol. 6. p. 52 and 53,
confirms the doctrine.

" The defendants, having been arrested for 80*l.*
on a *testatum capias* into *Surry,* gave to the plaintiff
a draft for 45*l.* saying it would be immediately paid,
and agreed to meet the plaintiff a few days afterwards
to settle the remainder of the debt; on which the
plaintiff agreed that the defendant should be dis-
charged out of custody. The draft was dishonoured,
the defendant having no effects in the hands of the
drawee. Whereupon the defendant was again ar-
rested on the same affidavit on a *testatum capias* into
*Middlesex.* A rule having been obtained calling on
the plaintiff to shew cause why the defendant should
not be discharged out of custody,

*Erskine*, in support of the rule, principally relied, that the plaintiff having agreed to accept this bill in part payment of the debt, could not, merely because the bill was dishonoured, treat the transaction *as a nullity*, and arrest the defendant a second time, there being no fraud in the transaction.

Lord *Kenyon*, Ch. J. In cases of this kind, if the bill which is given in payment do not turn out to be productive, it is not that which it purports to be, and which the party receiving it expects it to be, and therefore he may consider it a nullity, and act as if no such bill had been given at all.

These questions have frequently arisen at *Nisi Prius*, where they have always been determined the same way. I remember one in particular a few years ago, where a rider in the country gave a draft on a person in *London*, with whom he had no connection whatever; and it was admitted on all hands that it ought to be considered as if no bill had been given at all, and that the original debt remained in force. Our case is much stronger. We contend that the whole transaction was fraudulent in the defendant, and it is so set forth in the declaration; but if some doubts of this should arise, the declaration is not demurrable; but, as in the case of *De Symonds* v. *Minchwich*, it should be left for the consideration of the Jury.

The cases cited by Mr. *Chipman* from *Comyns' Digest* do not apply. They are cases of falsity without warranty. But in the case in question the affirmations of the defendant were in the nature of warranty. The plaintiff relied upon the false affirmations of the defendant that he was a landholder, and had a

Fisher
v.
Brown.

debt due to him; and the defendant thereby warranted his ability to pay the contents of the note. When the discovery was made, he sought redress for the injury received. The note taken through fraud being a nullity in law, the plaintiff might have either resorted to an action to recover the value of the horse, or have brought his action on the case in the nature of deceit. He has elected the latter.

If, however, there be any rule, any case, any decision found, which might seem to be against the present right of action, I shall conclude with quoting the words of Judge *Ashhurst*, in the case of *Pasley* v. *Freeman.* " I should not hesitate to say that it could not be law, for I have so great a veneration for the law as to suppose that nothing can be law which is not founded in common sense or common honesty."

*Durnf. & East,*
*vol. 3. p. 62.*

*Samuel Miller,* on the same side. I shall content myself by adding to the pertinent observations of my brother *Storr* a case from *Williams' Abridgment,* vol. 1. p. 124. which shews, that when fraud is discovered, the seller may abandon the contract, and seek his remedy on the deceit.

The custom of the city of *London* authorises an attachment for better security, and it would be well if the same practice was adopted here to prevent the pernicious effects of such deceitful representations as are alleged in our declaration.

If we could find no precedent in point, we all know of the principle which will sustain this action, even that great object of the law which is to protect the honest and unwary from the impositions of the artful and immoral. In pursuance of this principle, the

case of *Pasley* v. *Freeman* was decided. Lord *Kenyon* there observed, " that all laws stand on the best and broadest basis which go to enforce moral and social duties; that it was contended in that action, that it could not be maintained for telling a naked lie, but that proposition was to be taken *sub modo*. If indeed no injury is occasioned by the lie it is not actionable, but if it be attended with damage, it then becomes the subject of an action."

If, therefore, which we do not concede, our action has not the crutches of precedent to rest upon, it is firmly bottomed upon the broad basis of morality.

To the eye of legal science, our declaration may possibly appear insufficient. But to give it support will be doing what in the plain language of common justice is right between man and man.

Mr. *Chipman* arose to reply, but was stopped by the Court.

*Per Curiam.* When we read the copies of this case at our chambers, we felt desirous, if possible, to support this declaration. We had recourse to the authorities read, and to others which we considered might bear upon the subject, and endeavoured to excite our recollection to cases already decided in this State. But as Judges, we are not to permit even the moral sense to induce us to exalt ourselves into legislators. We sit here to declare the existing and not to create new laws.

The conduct of the defendant, as exhibited in the declaration, is highly reprehensible; and if prece-

dent alone were wanting, we should not hesitate in deciding that the declaration is sufficient.

Upon the first exception in demurrer, we observe, that we find no case in the books which reaches the present declaration.

The law considers, that contracting parties have a discretion to use, and they must in general exercise it at their peril. If they have not arrived at years of discretion, or if of adult age they are incapacitated by reason of idiocy, insanity, total imbecility, or other dispensation of Divine Providence, the law will avoid their contract, and has provided guardians to contract for them. If a contract is made under duress, or under such fraudulent imposition as common discretion cannot guard against, it is also voidable.

But it would be an unprecedented and dangerous doctrine, would tend to increase litigation, and render the citizens careless in the exercise of their rational powers, to sustain an action upon the case for a deceit upon the traverse of every assertion which a purchaser might make to obtain credit in the maturing of a contract.

When a man seeks to obtain credit for a chattel, and boasts his ability to pay, here is a proper occasion for the exercise of the discretion and vigilance of the vendor. If the defendant in the present case had falsely and roundly asserted that he was worth ten thousand dollars, and relying upon his assertion, the plaintiff had credited him for his horse, we believe it would not be contended, that an action of this nature would have lain. His falsely specifying the particulars of his pretended estate does not differ the case in a moral view, neither does it give a right of

action, which the plaintiff would not have had in the former case. In both cases the plaintiff should have been equally and sufficiently discreet to make the proper inquiries of others before he credited a stranger; for both the general and particular affirmations of the purchaser stand on the same ground, and resolve into the inquiry, whether he who relies on any naked assertions of a stranger made in his own favour, unaccompanied by false tokens as an inducement to give him credit, has suffered such an imposition as common prudence could not guard against.

It may be observed, that the contract set forth in the declaration was in *Orwell*, and the farm which the defendant affirmed that he owned, and the person who owed him, were said by him to be in *Cornwall*, a town in the vicinity, and in this case it reduces the point in question to this; whether the law will give redress for every imposition, however gross and however readily and easily avoided; and the old and rational doctrine of due discretion, diligence and vigilance in contracting parties shall be done away?

The Court consider further, that some special damage should have been alleged in the declaration; but we will not enlarge upon this point; for as this does not go to the right of action, it might have been cured by jeofails.

The second exception in demurrer we consider as fatal. The doctrine laid down by *Eyre*, Chief Justice, in the case of *De Symons* v. *Minchwich*, is recognised by this Court; that if the credit given was voluntary, subsequent to, and not making any part part of the original contract, it is so material a part of it, that if an action be brought within the time limited for the credit, it cannot legally be supported, unless it was not a *bona fide* purchase by the vendee.

*(Margin notes:)*
Fisher
v.
Brown.

In an action of deceit in a contract, some special damage ought to be alleged in the declaration.

If a credit given is voluntary, subsequent to and making no part of the original contract, it may at any time be retracted; but if it make any

Fisher
v.
Brown.

of the original contract, it certainly might at any time be retracted. But if it made part of the contract, it is so material a part of it, that if the action be brought within the time limited for credit, it cannot legally be supported, unless it was not a *bona fide* purchase at the time by the vendee.

It is said, whether *bona fide* purchase or not, is not the subject of demurrer, but should be left to the Jury. This depends on the form of the declaration. If the declaration does not, as in the present case, negate the fairness of the purchase, no issue can be carved out of it, embracing this question.

Judgment, that declaration is insufficient.

*Seth Storr* and *Samuel Miller*, for plaintiff.
*Daniel Chipman* and *Loyal Case*, for defendant.