Windsor, *February,* 1829.

### John P. Williams *vs.* James and John Hicks.

In an action on a promissory note, given for the purchase of the payee's patent right of making, using and vending saddles of a particular description, it is not relevant, under the plea of *non assumpsit,* for the defendant to show that the invention, for which the patent was obtained, is useless and of no value.

It is not a valid defence to such an action, that the vendor of the patent, in order to induce the defendant to purchase the right, *falsely* represented to him that one N. H. a saddler by trade, had offered a large sum for the right of making, using and vending the patent saddles in a particular district, and that the uniform price for a licence to make said saddles was $3,00 each, and that the defendant was induced to purchase said right by such representations. Such representations, though false, and made with a view to induce the defendant to purchase, do not constitute a fraud whereby the defendant can avoid the note.

WINDSOR,
*February,*
1829.

Williams
*vs.*
Hicks.

This was an action on note of $160, dated April 10th, 1820, executed by the defendants to one *Mixer*, and by him indorsed in blank, and delivered to a *Mr. Hall* of *Keene, N. H.* and was sued in the name of the plaintiff for said *Hall*. Plea, general issue. It appeared, and was undisputed, that this was one of five notes of the same sum and date, executed by the defendants for the purchase from said *Mixer* of his patent right of making, using and vending saddles of a kind described in said patent, called *Mixer's* patent spring saddles ; which notes were payable at different periods ; and this was made payable the last, save one, of said five notes.

At the trial in the county court, in December, 1826, the defendants offered evidence tending to prove, that *Mixer*, in order to induce the defendants to make the purchase, [represented at *Bennington*, in this state, when said contract was made, that one *Newton Hayes*, a saddler by trade, who then resided at *Burlington*, in this state, had offered *Mixer* three hundred dollars for the right of making, using and vending said saddles in the three upper or northern counties, in this state ; that said representation was false, and that said *Hayes* had offered no sum whatever for the right in said three upper counties ; and that the defendants relied upon said representations, supposing them to be true, at the time ; which testimony was objected to by the plaintiff, but was admitted by the court. The defendants also offered testimony tending to prove, that said *Mixer*, further to induce said purchase, and at the time and place of making said contract, affirmed to the defendant, that his uniform price for licence to make said saddles, was three dollars each, and that he sold at that price in *New-Hampshire ;* and that this representation was false ; which last testimony was objected to by the plaintiff, but was admitted by the court. The defendants also introduced testimony tending to prove that the three of said notes, first payable, had been paid by the defendants. The defendants also introduced testimony tending to prove that said patent was useless, and of no value, and was a vile cheat.

The plaintiff introduced testimony to prove that the patent was a valuable and useful improvement.

The plaintiff also introduced testimony tending to show, that after the assignment of the note to *Hall*, (which was in June, 1820) to wit, in Dec. 1820, the said *Hall* gave notice of the assignment to *John Hicks*, one of the defendants, at his shop in *Bennington*, and asked him if the note was good ; and that said *John* told him said note was good, and would be paid when due—that he expect-

WINDSOR,
*February,*
1829.

Williams
*vs.*
Hicks.

ed, when said note was given, it would be transferred, and that he was as willing to pay it to *Mr. Hall,* as to any person ; and also, that soon after the note became due, *Hall* presented it to *John Hicks* for payment, and that said *John* then stated that the note was good and would be soon paid.

The plaintiff's counsel requested the court to instruct the jury, that the matters so offered in evidence by the defendants, in relation to the offer of *Hayes,* and in relation to the price for licence to make saddles, could not, if proved, constitute fraud or deceit, so that the defendants could recover therefor, or avoid the notes, or any of them, on that account—And also requested the court to instruct the jury, that if they believed the testimony concerning the said assurances of said *John* to said *Hall,* the defendants were not now at liberty to set up any defence inconsistent therewith.— But the court refused so to instruct the jury ; but did instruct them that if they found the patent to be of no value, or that the discovery was no improvement in the making of saddles, or a much less improvement than represented by *Mixer,* when he made said contract, they were then to proceed to inquire what measures were used by *Mixer* to induce said defendants to enter into said contract—that if they should find that *Mixer* then made such representations about *Hayes'* offer of purchase, as is mentioned by the witnesses, and that the same was false, and that the defendants then relied upon said representations as true, in making the contract, the same did constitute fraud or deceit, of which the defendants might now avail themselves in their defence, in whole or in part, as the jury should find the extent of the deception ; that is, deduct so much as they should find the defendants injured by the same.   And the court gave the same instruction with regard to the representations about the price of sales of rights for making single saddles.

The court also instructed the jury that the testimony with regard to what was said by *John Hicks* at the times when he was called on, as before mentioned, if believed, would have no other effect than tend to show that the defendants were not deceived by the said representations of *Mixer.*

The jury, thus instructed, returned a verdict for the defendants. The case now came before this court on a motion for a new trial, founded on exceptions filed by the plaintiff to the aforesaid decisions and charge to the jury of the court below.

*Mr. Collamer,* for the plaintiff, cited 1 *Salk.* 211.—*Vernon vs. Keyes,* 4 *Taun.* 488.—2 *Stark. Ev.* 467, *note.*—*Anthon's N. P.* 87.

The opinion of the court was pronounced by

PADDOCK, J. The defence against a recovery in this case appears to be, *first*, that there was no consideration for the giving of the note in question,and the four others; the patent right,for the purchase of which they were given in payment, being useless and of no value,at the time of the purchase : and *secondly*,that *Mixer*, the vendor, to whom the notes were executed, made use of false and deceitful representations to the defendants at the time to induce them *to* purchase. .

The plea in this case being the *general issue*, almost every matter may be given in evidence under it, which goes to show that the plaintiff had no cause of action at the time he prayed out his writ : for the action being founded on the contract or promise of the defendant, any thing which disaffirms the obligation of the contract, at the time the action is commenced, goes to the gist of the action.—*Chitty's Pl.* 465.—The want of a sufficient consideration for the promise, or that the consideration had failed after the promise was made, would form a good defence to the action, the evidence of which would be admissible under this plea.—*Sill* vs. *Rood*, 15 *Johns. R.* 230.

But the law seems to be well settled, that a partial failure of the consideration for a promise cannot be set up as a defence in a suit brought upon it, under the issue of *non assumpsit;* and more especially where the suit is upon a promissory note ; for it would operate as a constant source of surprise upon plaintiffs, against which they would not be prepared to defend.—*Sill* vs. *Rood*.— *Temple* vs. *Mc Lacklan*, 2 *New R.* 136.—*Farnsworth* vs. *Garrard*, 1 *Campb.* 38.—*Basten* vs. *Butler*, 7 *East* 479, and *Brown* vs. *Davis, in n.* How much weight the jury gave to the testimony given in the trial " that the patent was useless, and of no value, and a vile cheat," under the instructions of the court, " that if they found the patent to be of no value, or that the discovery was no improvement, or. a much less improvement than represented," &c. we cannot tell, other than it gave to the jury great latitude. The difference in profit between making saddles upon *Mixer's* plan, or in the ordinary method, was not what the defendants purchased : but it was the right of using and improving *Mixer's* patent, or, in other words,a licence to make saddles after the manner and fashion described in his letters patent. And whether the discovery was valuable, or an improvement, or not —whether profit or loss would be the fruit of making saddles according to it, cannot affect the consideration of the notes given, as

WINDSOR,
*February,*
1829.

Williams
*vs.*
Hicks.

Windsor,
February,
1829.

Williams
vs.
Hicks.

it is a naked purchase. It would be a different question had the patent been vacated or overturned; at least, there would be some grounds upon which the defendants could make a claim upon *Mixer* for such proportion of the sum paid, as the time they then had the right of using it by the contract, bore to the time they had actually improved it; which would be according to the decision in *Taylor* vs. *Hare*, 1 *New Rep.* 260.—But it is there said, that in *Arkwright's case*, though it was vacated before the time in which it would have expired, yet no money was ever recovered back, notwithstanding large sums had been paid for the use of it.

We are next to see if any fraud was practiced upon the defendants by *Mixer*, which led them into the trade. The evidence to support the charge was, "that *Mixer*, to induce them to purchase informed them that *Newton Hayes*, a saddler, in the town of *Burlington*, had offered him $300 for the three northern counties in this State," and the defendants relied upon the representation, supposing it to be true, but which proved to be false. Also, "that his uniform price for license to make said saddles, was $3, each, and that he had sold so in *New Hampshire*, which was also false."

To support a defence upon the charge of fraud, it must be clearly alleged to have been committed by the plaintiff, and a damage resulting from such fraud to the defendants. The fraud must consist in depriving the defendants by deceitful means, of some benefit which the law entitled them to demand or expect. —*Vernon* vs. *Keyes*, 12 *East*, 636.—Where are we to look, in this case, for either the fraud practised upon the defendants by *Mixer*, or damage which they have sustained by means of any art or representation of his at the time of the sale? The case which the parties mutually made out, and have presented to this court, as a bill of exceptions, though not certified as such from the court below, does not instruct us whether the defendants purchased any, and if any, what portion of the *State*, or *United States*, of *Mixer*. It says, "the notes were given by the defendants, for the purchase from *Mixer*, of his patent right for making, using, and vending saddles." From which it would be too much to infer that the purchase covered either the three northern counties in this *State*, or the State of *New Hampshire*; and if neither, how they have sustained any damage from his representations as to what *Hayes* would give, or what he sold privileges for in *New-Hampshire*, we are left to conjecture.

WINDSOR,
February,
1829.

Williams
vs.
Hicks.

It may be remarked, too, that the defendants do not say they were influenced, or induced, by his representations to purchase of him; and it certainly is not for the Court to say that they were. Nothing is more difficult than to tell the moving cause to another man's action. If the inducement to purchase did not proceed from the representations, then the *damage* disappears at once, however losing their bargain may have been. As it respects what *Mixer* said of his price for selling licences for making single saddles, and that he had sold so in *New Hampshire*, the declaration, if it can amount to any thing, was too general to admit of the falsity being proved by shewing individual cases of sales at a less price; for had he sold in any instances, or in any part of the State of *New Hampshire*, at $3, his representation would have been true.

But admitting the fact that the defendants did purchase the right as to the three Northern Counties, and that he made the representation of *Hayes'* offer, and that his uniform price for licenses to make saddles was $3, each, and he sold so in *New Hampshire*, and that both of those representations were false; according to the rule laid down by *Ld. Elinbourough in Vernon vs. Keys*, a damage must result from such false representation in order to constitute a fraud, and that clearly alleged: saying that "the patent was useless, and of no value, and a vile cheat," is not sufficient; all that might have been true, and perfectly understood by the parties at the time.

This case compares fully in principle with that of *Vernon vs. Keys*, which was first decided in the *Kings Bench* in 1810, and afterwards removed into the *Exchequer Chamber*, and decided again in 1812—both Courts concurring in the opinion that the misrepresentation was not of that character which could constitute a fraud; and in the latter Court, *Mansfield, Ch. J.* says "it is no more than what every seller in this town does every day, who tells every falsehood he can to induce a buyer to purchase." 4 *Taunt.* 494. The case of *Bayley vs. Merrill, Cro. Jac.* 386, is also in point, which is, that *Merrill* contracted with *Bayley* to draw a load of madder a certain distance, at a given price, affirming that the weight was but 8 cwt. whereas, it was 22 cwt. and by means of the difference, he sustained an injury: but it was held that the plaintiff might have weighed his load, and not trusted to what the defendant told him. So in the case of *Harvey vs. Young*, *Yelv.* 21,—the defendant had a term for years, and in a treaty with the plaintiff for the sale of it, affirmed that it was worth £150; upon which the plaintiff gave that sum. It proved to be worth but £100:

F

WINDSOR,
February,
1829.

Williams
vs.
Hicks.

but it was held by the Court to be but the bare assertion of the defendant, and it was the plaintiff's folly to believe him. Also, in 1 *Rol. Abr.* 801 *pl.* 16," If a man, having a term for years, offers to sell it to another, and says that a stranger would give him £20, for it; by means of which assertion the other buys it, when in truth he was never offered £20 for the term: though he be deceived in the value, yet in truth no action on the case lies." And in the case at bar, if the defendants had an interest in knowing what *Newton Hayes* had offered *Mixer*, the distance from *Bennington* to *Burlington* was not so great, but that they might easily have applied to him and ascertained the truth; and if they did not, it was their own folly to dispense with that which common prudence required they should have done.

The Court are not able to determine upon what the jury founded their verdict ; whether they found there was no consideration for the note, or found what they were instructed would be a fraud: either of which they might perhaps have found from the instructions given them by the Court, if the same has been truly reported to us in the bill of exceptions.

The Court are satisfied that the declarations of *Mixer*, at the time the contract was entered into, were not such as the law will declare a fraud ; and also, that the instructions given to the jury in the court below, were erroneous ; and that the judgment of the county court must be reversed, and a new trial granted.

Judgment reversed.

*Williams* and *Collamer*, for plaintiff.
*Hutchinson*, for defendant.