### ASAPH P. CHILDS *v.* J. EDWARD MERRILL.

*False representations to obtain credit. When actionable.*

1. One who obtains credit by falsely representing that he has specific property in possession commits an actionable fraud.
2. The defendant for the purpose of inducing the plaintiff to endorse for him a promissory note, falsely represented to him that he, the defendant, owned certain lands in California, certain railroad stocks and a pair of horses, and promised to indemnify the plaintiff for his endorsement by security on this property. The plaintiff, relying upon these representations, endorsed the note, which he was subsequently obliged to pay. The California lands were heavily encumbered and the defendant did not own the stock and horses. *Held*, that an action would lie for the fraudulent misrepresentations.
3. Nor need the plaintiff, before commencing his suit, tender back to the defendant a mortgage of the California lands, which he had received, the same being worthless as security.

The action was case for false and fraudulent representations. Heard upon general demurrer to the declaration at the December term, 1890, Taft, J., presiding. The demurrer was overruled and the defendant excepted. Exceptions passed to the Supreme Court before final judgment.

The material part of the declaration, after stating that the defendant had applied to the plaintiff to endorse for him a note in the sum of $600, was as follows:

"And as an inducement to the plaintiff to endorse said promissory note for him, the defendant, the defendant then and there falsely, fraudulently and deceitfully represented to the plaintiff that he, the defendant, was then and there the owner in fee of certain lands situated in the State of California, unencumbered, of the value of six hundred dollars; located, bounded and described as follows, viz.: Lots seven (7) and eight (8) in block seventeen (17), situated in seven township, two south, four west, San Bernardino, meridian as deliniated on the map of the town of East Riverside, California, surveyed by J. C. Dunlop, C. E., in 1886, which said map is filed for record in the office of the County Recorder of said County of San Bernardino, to which said map reference is hereby made for a more particular description of the property hereby conveyed, together with all the tenements, hereditaments and appurtenances thereunto belonging, and in any wise appertaining, subject, however, to the reservations contained in the deed of the East Riverside Land Company to the said J. Edward Merrill. And as further inducement to the plaintiff to endorse said note the defendant then and there agreed to give the plaintiff a mortgage deed of said lands to secure and indemnify the plaintiff against any loss, damage, or injury he might suffer by reason of his endorsement of said note, but said mortgage was not given until afterwards, to wit; on the 12th day of December, 1888, and is the land hereinbefore described. And as further inducement to the plaintiff to endorse said note the defendant then and there deceitfully, falsely and fraudulently represented to the plaintiff that he, the defendant, was then and there the owner, free of encumbrance, of five shares of capital stock of the par value of one hundred dollars each, of the Fitchburgh Railroad Company, a railroad corporation existing under and by virtue of the laws of the Commonwealth of Massachusetts and there located.

And as further inducement to the plaintiff to endorse said note the defendant then and there decitfully, falsely and fraudulently represented to the plaintiff that he, the defendant, was then and there the owner of two horses free from encumbrance, of great value, to wit; of the value of four hundred dollars.

And as further inducement to the plaintiff to endorse said note, the defendant then and there falsely, and fraudulently, and deceitfully, represented to the plaintiff that the defendant would then and there give to the plaintiff a lien upon said five shares of capital stock of the Fitchburg Railroad Company, and upon said two horses, to further secure and indemnify him, the plaintiff,

Childs v. Merrill.

against any loss, damage or injury which he might suffer by reason of his indorsement of said note.

And the plaintiff avers that he then and there fully believed and relied upon each and every one of the aforesaid inducements and representations of the defendant; and by reason of said inducements and representations, and by reason of his, the plaintiff's aforesaid belief therein and reliance thereupon, he, the plaintiff, was by the defendant falsely, fraudulently and deceitfully induced to, and did then and there, to wit: on the 26th day of November, A. D. 1888, indorse and deliver said note to the defendant, at his request aforesaid, and for his accommodation, and for no other purpose.

And the plaintiff further avers that his indorsement of said note was wholly without other consideration than is hereinbefore stated and set forth. And the plaintiff further avers that the lands aforesaid were not on the said 26th day of November unencumbered as they were then and there represented to be by the defendant to the plaintiff as aforesaid, but in truth and in fact were then heavily encumbered by mortgage by reason whereof the aforesaid mortgage deed thereof to the plaintiff then and there became and was of little or no value to the plaintiff, and afforded him little or no security or indemnity against the loss, damage or injury which he might suffer by reason of his said indorsement of said note, of all which the defendant then and there well knew, to wit: at Bennington, on the 26th day of November, A. D. 1888.

And the plaintiff further avers that the defendant was not then and there the owner of the aforesaid five shares, or of any other shares of the capital stock of the Fitchburgh Railroad Company, and was not there and then the owner of the aforesaid two horses or of any other horses, all of which the defendant then and there well knew, to wit: at Bennington, on the 26th day of November, A. D. 1888.

And the plaintiff further avers that the defendant did not, and would not, though requested, on the said 26th day of November, A. D. 1888, or at any other time, give to the plaintiff a lien upon said five shares, or any other shares, of the capital stock of the Fitchburg Railroad Company, or upon said two horses, or upon any other horses, to secure or indemnify him, the plaintiff, against any loss, damage or injury which he might suffer by reason of his said indorsement of said note, of all which the defendant then and there well knew, to wit: at Bennington, aforesaid, on the 26th day of November, A. D. 1888.

And the plaintiff further avers that at and before his indorse-

ment of said note as aforesaid, and from thence hitherto, the defendant was and has been wholly insolvent and irresponsible, and the plaintiff further avers that afterwards, to wit: on the 26th day of November, A. D. 1888, at Bennington aforesaid, the defendant well knowing the premises, and well knowing that said lands were heavily encumbered as aforesaid, on and before the 26th day of November aforesaid, and that he was not the owner of said five shares, or any other shares of the capital stock of the Fitchburg Railroad Company, and that he was not the owner of said two horses or of any other horses, and that he had not and would not give to the plaintiff a lien upon said five shares, or any other shares of the capital stock of the Fitchburg Railroad Company, or upon said two horses, or any other horses, to secure or indemnify him, 'the plaintiff, against any loss, damage or injury which he might suffer by reason of his said indorsement of said note, and well knowing that he had by false, fraudulent and deceitful representations aforesaid, falsely, fraudulently and deceitfully caused and procured the plaintiff to indorse said note as aforesaid, nevertheless contriving and fraudulently intending, craftily and subtly, to deceive and injure the plaintiff in this behalf, on the day and year aforesaid, at Bennington aforesaid, falsely, fraudulently and deceitfully, caused and procured said note, so indorsed by the plaintiff as aforesaid, to be discounted in the regular course of business, while the same was current, by the First National Bank of North Bennington, Vermont, in good faith, and without notice to said Bank of the false, fraudulent and deceitful procurement aforesaid, of the plaintiff's said indorsement thereof, and then and there indorsed and delivered said note to said bank, yet the said defendant did not, and would not, though requested, pay the said note on the day when the same became due, and the same was duly protested for non-payment thereof, of which the plaintiff had due notice.

And the plaintiff further avers that the defendant has never at any time hitherto, though often requested, paid or caused to be paid the said note or any part thereof, but on the contrary the plaintiff has been compelled to, and in fact did pay to said bank, said note, and the full sum of money therein specified, to wit: at Bennington, aforesaid, on the 7th day of February, A. D. 1889."

*C. H. Darling,* for the defendant.

Before bringing this suit the plaintiff must exhaust his remedy on the mortgage. *Poor* v. *Woodburne,* 25 Vt. 234; *Mallory* v. *Leach,* 35 Vt. 156; *Kelley* v. *Pember,* 35 Vt. 185.

The gist of the plaintiff's declaration is that the defendant promised to secure the plaintiff for indorsing a note by giving him a lien upon certain property and has failed to do so. Tort will not lie for the breach of a promise. *Best* v. *Smith*, 54 Vt. 617; *Kilson* v. *People*, 23 N. E. Rep. 1024; *Dawe* v. *Morris*, 21 N. E. Rep. (Mass.) 313; *People* v. *Healy*, 20 N. E. Rep. 692; *Knowlton* v. *Keenan*, 15 N. E. Rep. (Mass.) 127; *Lamb* v. *Stone*, 11 Pick. 527.

A misrepresentation as to pecuniary ability for the purpose of obtaining credit is not actionable.

*Best* v. *Smith*, 54 Vt. 617; *Snow* v. *Woodburne*, 27 Vt. 415; *Dyer* v. *Tilton*, 23 Vt. 313; *Williams* v. *Hicks*, 2 Vt. 36; *Fisher* v. *Benjamin*, 1 Tyler 387.

*Batchelder & Bates*, and *J. B. Meacham*, for the plaintiff.

The wilful telling of an untruth to a party to induce him to alter his condition whereby he is induced to alter it, is a fraud in law for which an action will lie. *Murrey* v. *Mann*, 2 Exch. 538; *Hubbard* v. *Briggs*, 31 N. Y. 518; *Wardell* v. *Fosdick*, 13 John. 395; *Ward* v. *Winan*, 17 Wend. 103; *Clark* v. *Baird*, 9 N. Y. 183; *Haight* v. *Hoyt*, 19 N. Y. 464; *Hubbell* v. *Meigs*, 50 N. Y. 480.

The opinion of the court was delivered by

ROSS, Ch. J. The contention is whether the declaration when encountered by a general demurrer, discloses a cause of action. It sets forth that the defendant, being pecuniarily embarrassed and desirous of raising money, procured the plaintiff as a matter of accommodation, to indorse his promissory note for six hundred dollars; and to induce the plaintiff to make the indorsement, the defendant falsely, and fraudulently represented to him, that he owned, unincumbered and in fee, certain lands in California, and certain shares of railroad stock, and two horses; and to secure him for making such indorsement he would mort-

gage to him the lands, and give him a lien on the railroad stock and horses; that in reliance upon the truth of the representations he made the indorsements; that the defendant gave him afterwards a mortgage of the California land, but it was heavily encumbered, so that his mortgage was of little or no value; that the defendant did not own the railroad stock nor horses, and did not, and would not give him a lien thereon; that the defendant well knew the falsity of his representations and made them to deceive the plaintiff; that the plaintiff thereby was deceived and has had to pay the note; and that the defendant was and is wholly insolvent, and irresponsible. The representations and indorsement are alleged to have been made on the 26th day of November, 1888, and the mortgage of the California lands to have been given December 12th following. The averment is that they were encumbered on November 26th. The defendant contends that it is not a good averment that these lands were encumbered when the mortgage to the plaintiff was given December 12th. But the averment that they were heavily encumbered at the date of the representations declares the falsity of the representations then made, and their condition at that date would be presumed to exist, unless something to the contrary appears, at the time the mortgage was given to the plaintiff. The material averments however are the falsity of the representations when made, and that the plaintiff has been damaged thereby. The damage is declared by the allegation that the lands were heavily encumbered by mortgage, by reason whereof, the mortgage deed thereof to the plaintiff became and was of little or no value. To sustain an action of this nature, deceit and damage must concur. In these allegations, we have known misrepresentations, deceit and damage. These are the only required elements of an action of fraud, if the misrepresentations are of an actionable character. As said by Croke, J., Bulst. Pt. 3, 95, "fraud without damage, or damage without fraud, gives no cause of action, but where these two do concur then an action lieth." *Pasley* v. *Freeman*, 3 T: R.

51. This form of action does not rest upon the defendant's non-performance of his promise to give the plaintiff a lien upon the railroad stock and horses, but upon the deceit consequent upon his misrepresentation that the California lands were free from incumbrance and that he owned the railroad stock and horses, and the damage resulting therefrom. The plaintiff avers that these misrepresentations were made to induce him to indorse the defendant's six hundred dollar note, and did induce him to indorse it whereby he has had to pay the note, and has no means of enforcing payment from the defendant. He might have had no means of enforcing payment from the defendant if his inducing representations had been true, but he would be more likely to have. While damage must concur to support the action, the gist of the action is the inducing misrepresentations knowingly made by the defendant. That the plaintiff has had to pay the defendant's note, imports some damage, even if he could enforce payment from the defendant. Hence the allegations in regard to both classes of property are sufficient to sustain the action, if they were of an actionable character. Nor would the plaintiff have to rescind, by tendering back the mortgage he received, of the previously encumbered California land, to entitle himself to maintain this form of action. *Mallory* v. *Leach*, 35 Vt. 156; *Kelly* v. *Pember*, 35 Vt. 183. On the allegations, that mortgage, subsequently given, was not the inducing consideration for the plaintiff's indorsement, but the representations that the defendant owned the railroad stock and horses, and owned the land free from incumbrance, and would give the plaintiff security upon all of them. Retention of the slight security, if any, he thereby obtained would not waive the tort. The plaintiff by tendering back the mortgage, upon learning the falsity of the defendant's representations, could not have relieved himself from his liability as indorser upon the defendant's note to the bank. Rescission is required, only in cases in which it would place the parties in *statu quo*.

But it is further contended that the defendant's false representations were of his own pecuniary resources, and that an action for deceit does not lie for such misrepresentations, and he cites in support of this proposition, *Fisher* v. *Brown*, 1 Tyler 387; *Williams* v. *Hicks*, 2 Vt. 36; *Dyer* v. *Tilton*, 23 Vt. 313; *Snow* v. *Woodburn*, 27 Vt. 415; and *Best* v. *Smith*, 54 Vt. 617. *Fisher* v. *Brown* was heard on demurrer to the declaration. The declaration alleged that the defendant purchased of the plaintiff a horse on credit, and gave his note therefor on time, by falsely representing that he owned a farm in an adjoining town and had a debt due him there. The suit was brought before the note fell due. The declaration contained no allegation of special damage. The court held the declaration insufficient on three grounds: 1st. When a man seeks to obtain credit for a chattel, and boasts his ability to pay, the vendor should exercise discretion and vigilance, and make inquiry and not rely solely upon the representations of the purchaser as to his pecuniary responsibility. 2d. That there was no allegation of special damage arising from the misrepresentations. 3d. Where the credit is a part of the contract, it is so material a part of it, that if the action be brought within the time limited for credit, it cannot legally be supported, unless it was not a *bona fide* purchase at the time by the vendee. *Williams* v. *Hicks* was an action upon a promissory note given for a patent right for the manufacture and sale of saddles. The misrepresentations relied upon in defence related to what the vendor claimed to have been offered for the right to manufacture and sell in certain counties, and that he had a uniform price for a license to manufacture saddles in New Hampshire. It did not appear that the note was given for the right to manufacture and sell in the counties named. It was held that these representations, if false, did not show a defence to the note; that they did not show that the defendant suffered any damage, nor did he say that they induced the purchase. It is intimated that they did not extend beyond the right of a vendor to

recommend his property, and should not be relied upon by the purchaser.   In *Dyer* v. *Tilton*, the defendant obtained credit of the plaintiff by falsely representing that he possessed two bank bills, one for $100 and the other for $20 and that a certain person owed him.   Before bringing his action for fraud the plaintiff had recovered on the contract but failed to collect his judgment.   The court held that the action was of novel impression : that the testimony showed nothing more than the ordinary evasions, to which men always do, and may be expected to resort, when reluctant to disclose the state of their property ; and that the plaintiff had elected to treat the matter as one of contract.   This case is criticised in *Poor* v. *Woodburn*, 25 Vt. 234.   It is there said that the case of *Dyer* v. *Tilton*, was effectually concluded as one of contract, by the judgment. Judge Isaac F. Redfield speaking for the court, says, " In regard to fraud, the question must be determined a good deal upon the cases.   There is doubtless a considerable difference between fraudulent representations in regard to the extent of one's property in the general, and in the detail.   In one case you have the means of forming your own opinion, and in the other, you trust altogether to the estitmate of one's own resources, which is proverbially a very poor reliance.   But how far a man is justified in asserting clear falsehoods even upon matters resting in opinion may be questionable.   One may as surely perpetrate fraud in the one as in the other mode of misrepresentation." *Snow* v. *Woodburn*, is an action for fraud predicated upon a representation by a person asking for credit, that he is safe to be trusted and given credit to.   It was held that such representation should be regarded as merely a matter of opinion, and should not be relied upon as matter of fact.   But Judge Bennett is careful to say, " Farr ( the purchaser ) did not make any false representation as to any item of property which he possessed, but simply that he was safe to be trusted and given credit to."   In *Best* v. *Smith*, the defendant obtained credit of

the plaintiff on his promises to reimburse them from the avails of the road which he was under a contract to furnish to the railroad company, and on his promise to assign the pay coming from his future performance of the contract to the plaintiffs. It is held that the duties and obligations of the defendant rested altogether in *promise*; that there was no representation of the defendant that he had property in possession; but that he had a *contract* which if *performed*, would be of value. From this review of the authorities cited by the defendant it will be seen that only in *Fisher* v. *Brown*, and *Dyer* v. *Tilton*, were there any false representations of property in possession. The latter is criticised subsequently and made to rest upon being concluded by the judgment as resting in contract. The first had other sufficient grounds upon which to rest. So far as they hold that false representations of property in possession causing damage, made by a purchaser to obtain credit, are not actionable, they must be considered, not only in the light of the criticism of one, by Judge Isaac F. Redfield already alluded to, but in the light of other cases bearing upon the same subject. In *Hodgeden* v. *Hubbard*, 18 Vt. 504, the plaintiff purchased a stove on credit, falsely representing that he owned a farm in Cabot and considerable stock upon it; that he owned the team he had with him and carried on a large business manufacturing butter firkins, and gave his note for it on six months' time. The purchase was at Montpelier, from a clerk. The clerk learning that the plaintiff was pecuniarily irresponsible, and that his representations of property in possession were false, pursued him, and forcibly retook the stove. The action was trespass for assault and for taking and carrying away the stove. The representations having been found knowingly to be false and to have induced the purchase and credit, it was held that no property in the stove vested in the plaintiff and that the defendant might lawfully forcibly retake it. To much the same legal effect, are *Fitzsimmons* v. *Joslin*, 21 Vt. 129, and *Chamberlin* v. *Fuller*, 59

Vt. 247.   These cases hold that when a person asking for credit obtains it, by making false representations in regard to property in his possession and ownership, which are relied upon and induce the credit, he does not, because of the fraud, obtain title to the property purchased on credit.   In other words, they in effect hold that by such representations the purchaser commits an actionable fraud.   The vendor may elect to waive the fraud, and hold the purchaser on his contract, and generally does so if he does not rescind the contract as soon as he is made aware of the falsity of the representations, or of the fraud.   We think the cases last cited, must be held to have so far modified and overruled the apparent holdings in *Fisher* v. *Brown* and *Dyer* v. *Tilton*, that a person purchasing upon credit does not commit an actionable fraud, when he induces the purchase by false representations in regard to his property in possession.   Such representations are not expressions of opinion or estimates of one's ability to pay, but statements of facts in regard to his property in detail, on which the vendor has the right to rely, and form his own opinion or estimate of the purchaser's right to credit.   All these cases apparently rest upon the leading case of *Pasley* v. *Freeman*, 3 T. R. 57 decided in 1789.  In that case the defendant knowingly, falsely represented that the proposed purchaser on credit, was a man of good credit.   Such representations relied upon were vigorously contended not to be fraudulent, that the maker gained nothing by making them.   Buller, J., relying to this contention, says :   " But let us see what is contended for : it is nothing less than that a man may assert that which he knows to be false, and thereby do an everlasting injury to his neighbor, and yet not be answerable for it.   This is as repugnant to law, as it is to morality."   And Lord Kenyon, Ch. J., says :   " All laws stand on the best and broadest basis which go to enforce moral and social duties."   The repugnancy to law and morality is not any the less when the proposed purchaser knowingly resorts to false representations of *facts* in regard to himself to

Childs *v.* Merrill.

acquire property upon credit. The proposed purchaser on credit may recommend himself as a man of credit, may over-estimate the value of his property in possession without legal liability. These statements rest largely in opinion, and are so understood between the parties. His credit often depends as much upon his habits of frugality, and industry, upon his good health, and un-waivering integrity, as upon his possession of property. He is expected to place a high estimate upon the value of his property. The vendor of a horse may over-value it. The proposed purchaser expects he will. This is a matter of judgment, and the purchaser relies upon his own. On representations of matters of judgment and opinion, each party forms and relies upon his own. But when the vendor or purchaser calls upon the other for a statement of facts, he is entitled to have them given as the party honestly believes them to exist, and if he knowingly makes a false statement of facts to secure a sale or purchase, and thereby secures it to the damage of the other party to the transaction, he not only disregards his moral and social duties, but commits an actionable fraud, which the law will redress.

*The judgment is affirmed and cause remanded.*