Hon. PIERPOINT ISHAM, ⎫ ASSISTANT JUDGES.
Hon. MILO L. BENNETT, ⎭

---

## HENRY POOR *v.* JOHN WOODBURN AND RUFUS FARR.

### *Replevin. Fraud. Verdict and costs.*

In an action of replevin, where the verdict is for both parties; for one, damages and costs, as to that portion upon which he maintained his replevin; and for the other, for the return of the property improperly taken by the writ, damages for its detention, and costs; the judgment must follow the verdict, and the costs must be apportioned according to equity.

Where one has been induced, by false representations, to sell goods, and would rescind the contract on the ground of such false representations, he must be in a condition to put the other party *in statu quo.*

A creditor, who attaches property obtained by fraudulent practice or misrepresentation, does not acquire any better right to hold it, as against the former owner, who has been thus fraudulently deprived of it, than the fraudulent vendor

had; and a mere assignment of the goods, in security of a pre-existing debt, can confer no greater right than an attachment; as there is no new consideration for the assignment, the assignee only takes the right of the assignor.

REPLEVIN for certain goods. Plea, not guilty, and trial by jury. April Term of the County Court, 1852,—COLLAMER, J., presiding.

On trial, the plaintiff gave evidence, tending to prove that on the tenth day of September, A. D. 1849, one Eli S. Farr, of Windham, applied to the plaintiff, at Boston, to purchase goods on credit, and the plaintiff informed him that he should not so sell until further informed of his means. That the said Eli then told the plaintiff that he was worth more than two thousand dollars beyond all his liabilities.

Whereupon the plaintiff sold and delivered to said Eli, on credit, the goods, and took his note therefor, and the goods were sent to Windham.

The plaintiff also offered evidence, tending to prove that soon after the return of the said Eli to Windham, with these goods, and others, purchased of other men in Boston, to the value of two thousand dollars, the same were delivered by said Eli to his father Rufus Farr, of said Windham, by pledge, to secure him for liabilities by him previously incurred and assumed for said Eli, for more than that amount.

That at the time of the purchase of said goods of the plaintiff, the said Eli was indebted to the amount of several thousand dollars beyond all he had, or was worth, and that this was well known to the said Eli, and not known to the plaintiff. That the defendant, Woodburn, as constable of Windham, attached the other goods of the said Eli, not so pledged, on suits in favor of said Rufus, on debts due him by said Eli, before said sale, not secured by said pledge, and also on attachments of other creditors, on debts contracted before said sale by the plaintiff, and the same were placed in the same room in said Rufus Farr's house, in his possession, where were the goods so pledged to him as aforesaid, and on said writs of attachment was also taken the interest of said Eli in said goods, so pledged.

That on the third day of October, 1849, the plaintiff went to Windham and demanded said goods, so by him sold to the said Eli, of said Rufus Farr, who declined to deliver the same; whereupon the present suit was commenced.

The plaintiff also offered testimony, tending to prove that the goods taken by the officer on the writ in the present suit, were the same goods sold by the plaintiff to the said Eli as aforesaid.

The defendants then offered testimony, tending to prove that the said Eli did not make the representations to the plaintiff as to his means and ability as aforesaid, and that the plaintiff did not rely thereon in his sale ; and that two pieces of satin, sold by the plaintiff to said Eli, were kept by said Eli, and were never by him pledged to said Rufus, and never came into the possession of either of the defendants ; that the satin actually taken and returned by the officer, on the writ in this suit, was other satin owned by said Eli, and pledged and delivered to said Rufus.

The defendants requested the court to charge the jury, that if they found said Eli made the representations to the plaintiff his testimony tended to show, knowing them to be untrue, they were not of the character that would defeat the sale made by the plaintiff, or entitle him to reclaim the goods as his property.

That the plaintiff could not reclaim the goods from said Rufus, if they were pledged and delivered to him without his having knowledge or notice of said false representations. And that plaintiff could not recover, unless the jury found that all the articles mentioned in said writ were owned by the plaintiff; and if the satin actually taken by the officer was never the property of the plaintiff, he was not entitled to a verdict, but the jury should find the defendants not guilty.

The court declined so to charge, but did charge the jury, that if they found the said Eli made to the plaintiff the representations the testimony tended to show, knowing the same to be false, and found that the plaintiff relied thereon, and without which he would not have sold said goods to said Eli, on credit, it was such fraud as authorized the plaintiff to rescind said sale, and reclaim the goods ; that he might reclaim said goods from the possession of said Rufus, if the same were pledged to him by said Eli, only for liabilities which he had incurred for said Eli before said sale by the plaintiff; and that the attachment of said goods, or the interest of said Eli therein, on such debts only as existed before said sale, did not prevent the plaintiff from reclaiming the same. And the court further instructed the jury, that they might find the defendants guilty as to such articles in the writ as belonged to the plain-

Poor *v.* Woodburn et al.

tiff, and as to the rest, not guilty; and to award a return of such articles as were replevied on the writ not belonging to the plaintiff, with damages for the taking thereof. To which charge of the court, the defendants excepted.

The jury found the defendants guilty as to all the articles mentioned in the plaintiff's declaration, (except two pieces of satin of five yards each,) and for plaintiff to recover one cent damages; and that defendants are not guilty as to the two pieces of satin, and that the ten yards of satin replevied be returned to the defendants, and that the defendants recover four dollars and twenty-six cents damages for the taking thereof.

The court rendered judgment that the plaintiff recover one cent damages and his costs.

Exceptions by defendants.

The defendants moved to be allowed costs, which motion was overruled, to which the defendants also excepted.

*A. Stoddard, W. C. Bradley,* and *D. & G. B. Kellogg* for defendants.

The County Court erred in their instructions to the jury.

I. If this suit can be maintained at all, it must be upon the ground that there was a recision of the contract of sale.

For the facts disclosed do not present a case of *stoppage in transitu;* the goods had been purchased, a promissory note given for the price, the goods delivered, and received by the vendee at the place of destination.

1st. There was no recision of the contract.

2d. To constitute a recision, the parties must be placed in *statu quo,* or at least there must be sufficient ground for rescinding, and ability on the part of the person rescinding to place the parties in *statu quo,* and an offer so to do. 3 N. H. 455, *Shepard* v. *Temple.*

3d. This was not done, as there was neither a *surrender* nor an *offer* to surrender the note which was given for the goods, but the same is still outstanding.

II. The court erred in refusing to allow the defendants costs, inasmuch as by the verdict they were entitled to a return of a portion of the goods and damages for their detention.

III. If the goods were obtained of the plaintiff upon the false representations of Eli S. Farr, yet inasmuch as the defendant Ru-

fus Farr was ignorant of the fraud, and received them in pledge for a *valuable consideration*, he is entitled to hold them until redeemed, against the plaintiff and all others.

*Stoughton & Baxter* for plaintiff.

The fraud in this case is, that Eli S. Farr procured the plaintiff to sell the goods on credit to him, when he would not otherwise have trusted him, by asserting that which he knew to be false, in relation to his ability to pay.

It has been held, that if a person purchase personal property by means of false representations, as to his means to pay therefor, he acquires no title thereto, and that the vendor may reclaim the property thus sold. *Buffington* v. *Gerrish*, 15 Mass. 156. *Badger* v. *Cheeney*, Mass. 359. *Hodgeden* v. *Hubbard et al.*, 18 Vt. 504. *Fitzsimmons* v. *Joslin*, 21 Vt. 129. 18 Pick. 95. 8 Metcalf, 283. Chitty on Con. 407 and 682.

And it is well settled that the vendor may reclaim such goods from the possession of the creditors of the purchaser, held upon debts contracted prior to such sale, whether held by pledge, attachment or sale, for the security or payment of such debts.

That no action could be sustained, for the deceit cannot affect in any way this action, which goes upon the ground that the contract is rescinded, while the action for deceit goes upon the ground that the contract is still subsisting, and to recover damages for the breach of it. *Kimball* v. *Cunningham*, 4 Mass. 502.

In the present case, each party has prevailed within the intent of the statute. The plaintiff is entitled to damages for the wrongful detention of the goods found by the jury to be his property, and the defendants must have a return of the goods not belonging to the plaintiff, and the damage for the taking. *Powell* v. *Hinsdale*, 5 Mass. 343. *Brown* v. *Smith*, 1 N. H. 36.

The court declined to tax costs for the defendants. The application was to tax all the defendants' costs, which would be clearly wrong, and if they had applied for costs upon that issue, none could have been allowed, for the reason that none accrued. The case was tried upon the general issue, as the statute provides it shall be in such cases.

Poor *v.* Woodburn et al.

The opinion of the court was delivered by

REDFIELD, CH. J.  In regard to the form of the judgment, the statute is explicit, when the verdict is entire for either party. And where part of the goods are properly replevied and part unlawfully, the verdict must be for both parties; for one, damages and costs, as to that portion upon which he maintains his replevin; and as to the defendant, for the return of the property improperly taken by the writ, damages for its detention, and costs.  And if this is the proper form of the verdict, the judgment must follow the verdict, and the costs must be apportioned according to equity.

In such a case, the general power of the court will extend, no doubt, to set off the damages and costs, and the issuing execution for the balance, where no reason exists for a contrary course.  The case of *Brown* v. *Smith*, 1 N. H. 36, is a full authority for this form of judgment, both as to damages and costs.   The same seems to be the law of Mass., *Powell* v. *Hinsdale*, 5 Mass. 343. 18 Vt. 504, 1 Pick. 357.  This change in the form of the judgment could all be effected, in this court, except that in relation to the apportioning of the costs, which could only be done properly in the court below; and for that purpose, at least, the case must be remanded to the County Court.

As to the merits of the case, there does not seem to have been any question made, in the County Court, in regard to the recision of the contract.  If that had been made a distinct question there, very likely the facts upon that point being more fully stated, it might appear somewhat different from what it does now.  That being so, we feel justified in making pretty liberal constructions of the case, upon this point, in favor of the judgment below.

The party, who would rescind a contract of this kind, must, no doubt, be in a condition to put the other party *in statu quo*.  If, for instance, he had parted with the note, he could not retain the property, even when he proved the most unequivocal fraud.  And upon the trial, he should, if required so to do by the opposite party, furnish the note, to be disposed of, under the direction of the court.

There is nothing in the case to show that he had made any disposition of the note, or that any other impediment existed to the perfect restoration of the rights of the vendee to his situation, before the sale.  If this existed, and was relied upon, it should have

appeared in the case.  We are bound to make all reasonable presumptions in favor of the judgment below.  So too, in regard to surrendering the note upon trial, if the party deems it important for his security, he could even move it in this court, after judgment is finally affirmed, and have the note surrendered.  That has often been required, and sometimes in this court even, as a condition precedent to the party's taking execution on a judgment upon a collateral remedy.  But it does not seem to have been even insisted upon, either in the County Court, or in this court.

And so long as the vendee obstinately resisted the giving up of the goods, upon any condition, maintaining the perfect validity of the sale, in all respects, and as the vendor would clearly not be required to surrender the securities until he could obtain a surrender of the goods, the mere form of offering the note, in exchange for the goods, after they had been assigned to a third party, and both he and the original vendee firmly insisted upon keeping their hold upon them, would seem very idle.  We are not prepared to say, that we should regard it as at all necessary to the recision of the contract, upon the part of the plaintiff, if the facts in the case are sufficient to justify the recision in other respects.

The character and degree of the fraud shown, and the form in which the issue upon this point was submitted to the jury, are the only grounds upon which we have entertained serious question.

We might say here, perhaps, that it seems to be conceded in the argument, or very nearly so, and it is certainly so treated in some of the cases referred to, that a creditor, who attaches property obtained by fraudulent practice or misrepresentation, does not acquire any better right to hold it, as against the former owner, who has been thus fraudulently deprived of it, than the fraudulent vendee had.  And if so, it seems to follow, that a mere assignment of the goods, in security of a pre-existing debt, could confer no greater right than an attachment; as there is no new consideration for the assignment, the assignee only takes the right of the assignor.

In regard to the fraud, the question must be determined a good deal upon the cases.  There is doubtless a considerable difference between a fraudulent representation, in regard to the extent of one's property, in the general and the detail.  In one case you have the means of forming your own opinion, and in the other you trust altogether to the estimate of one's own resources, which is proverb-

ially a very poor reliance. But how far a man is justified in asserting clear falsehoods, even upon matters resting in opinion, may be questionable. One may as surely perpetrate fraud in the one as the other mode of misrepresentation. The case of *Hodgden* v. *Hubbard* recognizes the case of *Buffington* v. *Gerrish,* 15 Mass. 156, as sound law; and this latter case holds, that the attaching creditor stands in the place of his debtor only, if he was a creditor prior to the purchase of the goods, and consequently that replevin will lie for the vendor who has been deceived as to the credit of the vendee.

And it will be borne in mind, that this case involves no question of retaining the securities for the goods, and thus affirming the contract to that extent, and at the same time sustaining an action for fraud against the party, for obtaining them; and thus having a double remedy for the goods against the same party, one in contract, and one in tort, which are in their nature altogether inconsistent with each other. It is upon this ground mainly, that it has been denied the party to lie by, and not offer to rescind the contract of sale, until it becomes too late for the party to do that, and the contract thus becomes irrevocably affirmed and confirmed, so that it is, as between the parties, a sale, and nothing else, fully acquiesced in by by both parties. Under these circumstances, it has been denied the party to seek out another collateral, independent, and inconsistent remedy, in tort. If the party wishes to sustain an action in tort, for the fraud, he must, on discovering the fraud, offer to rescind the contract of sale at the earliest possible moment, and thus abandon his remedy by contract. He may thus sustain replevin, or trover, or trespass on the case perhaps, on sufficient proof of the fraud. But it has been held, with great propriety, we think, that the party shall not hold on upon securities for the price, and then, when the debtor becomes unable to pay, invoke the aid of the court, to grant him a remedy in tort, so as to enable the party to obtain redress against the body of his debtor, still retaining a coordinate remedy against his property. The case of *Dyer* v. *Tilton,* 23 Vt. 313, is not put altogether upon this ground. That case was effectually concluded as one of contract, by the judgment. And so equally is every case of sale, where the vendor does not offer to rescind, at the earliest discovery of the fraud, or opportunity to discover it. By retaining the securities, where any such are giv-

en, or what is the same thing, by not offering to rescind the contract at the earliest opportunity, the contract becomes binding upon both parties, to the fullest extent. It then involves an absurdity, to allow also a collateral remedy in tort, for the fraud, which the party has conclusively waived, by acquiescing in the contract of sale. It is not so when the fraud is perpetrated by the fraudulent representation of a third party, not connected with the contract. It is proper in such cases, that each party should be liable according to his several participation in the transaction, the one in contract for the price, the other for his fraudulent representation. But, that the same party should be held, by these inconsistent remedies, is certainly unreasonable. But no such question directly arises in the present case. The only remaining question is one of fraud; and it seems to us, that although much less reliance is due to one's unaided representation of his own ability to pay, than to that of a third party, it cannot be assumed that it is impossible to perpetrate such a fraud, in this mode, as to entitle the vendor to rescind a sale of goods. The instructions to the jury seem to have been proper in this case, and the rest is matter of fact, for the jury. The judgment is reversed and the case remanded, to have the County Court enter the proper judgment, according to the verdict, and apportion the costs equitably.