## COUNTY OF PROVIDENCE, SEPTEMBER TERM, 1860, AT PROVIDENCE.

PRESENT:

Hon. SAMUEL AMES, CHIEF JUSTICE.
Hon. GEORGE A. BRAYTON, } JUSTICES.
Hon. ALFRED BOSWORTH, }

## DUVAL & IGLEHART *v.* WARREN B. MOWRY.

In trover by the vendor, for goods purchased on credit by the defendant by means of fraudulent misrepresentations of his own property and that of another by whose acceptances he secured payment for the goods, it is not necessary — the drafts being overdue and worthless from the insolvency of both parties to them at the time of action brought — to restore, or offer to restore, them to the defendant before the commencement of the action; but it is sufficient, if they are brought into court at the trial, to be impounded for the use of the defendant; and, in such case, cash and the note of a third person, originally, or before the discovery of the fraud, received by the vendor in part payment for the goods, need not be restored to the defendant at all, to enable the vendor to maintain such action against him for the balance of the goods included in the purchase, out of which he had been defrauded.

TROVER for the conversion by the defendant of a large quantity of copper whiskey and brandy in barrels, the property of the plaintiffs.

The case was tried at the September term of this court, 1859, before the chief justice, with a jury, under the general issue, and at the trial it appeared, that the liquors, which were the subject of the action, were bought at Baltimore, in Maryland, by the defendant of the plaintiffs, who were produce-dealers in that city, on credit, in three several parcels, on the 7th day of August and on the 17th and 30th days of September, 1858; payment to be secured by drafts drawn by the defendant upon one Philip K. Holbrook, of Boston, at four months, and by him accepted; that the credit was induced by false and fraudulent representations of the ability of the defendant and Holbrook to pay the drafts given to secure it; the defendant, who resided in Smithfield, Rhode Island, though doing business in Baltimore, being grossly insolvent, and Holbrook, whom he represented as worth from thirty to forty thousand dollars, being wholly destitute of property, — his household furniture having been mortgaged by him beyond its value, for five hundred dollars, to secure small loans of from ten to twenty-five dollars, from time to time made to him by the mortgagee. To prove the fraudulent design with which the above false representations were made to them by the defendant, the plaintiffs offered evidence of similar false representations made by the defendant in Baltimore, at or about the same time, to other dealers there for the purpose of giving credit to similar drafts and procuring credit upon the faith of them, without offering to prove that the plaintiffs, at the time they gave credit to the defendant, had any knowledge of such representations. The defendant objected to this proof; but the presiding judge, notwithstanding the objection, admitted the proof for the purpose for which it was offered, whereupon the defendant excepted. It further appeared, that the goods purchased by the defendant on the 7th day of August, 1858, amounting in all to $1,396.94, were purchased partly by another person, one Silsbury, who accompanied the defendant at the time of the purchase, and that the defendant then stated to the plaintiffs " that Mr. Silsbury wished to ship with him, and that by buying so much, the plaintiffs would probably make the price less;" that " Silsbury would settle for his part, and the defendant for his part;" that thereupon Silsbury

said to the plaintiffs, that " he had not quite cash enough," and offered to the plaintiffs, to make up the balance for his part, the note of one Franciscus, for the sum of $275; that the plaintiffs hesitated to take the note, and the defendant said that " he was prepared to settle his part, as soon as the plaintiffs had agreed with Silsbury, and that he had nothing to do with Silsbury's bargain;" that the plaintiffs, after inquiring about the note of Franciscus, agreed to take it, when the defendant said " that the plaintiffs could make out the bill to him, and that he would settle with them for the whole, and would settle with Silsbury." The plaintiffs, accordingly, made out the bill for the whole purchase against the defendant, the goods being charged upon the plaintiffs' books against him, and in the settlement of the bill, the defendant gave to the plaintiffs the Franciscus note, as agreed, for $275, and $330.51 in cash, covering Silsbury's part of the purchase, and for his own part of it, two drafts upon Holbrook, one for $352.23, and the other, for $439.20. The plaintiffs claimed damages, and the verdict was for, only one half of the goods embraced in this purchase. The goods purchased on the 17th and 30th days of September, 1858, were settled for by the defendant wholly by drafts drawn by him on Holbrook, and accepted by the latter. It further appeared, that Holbrook and the defendant were, at the time the action was brought, without any visible property, and insolvent, and that the drafts given for the goods purchased of the plaintiffs were returned upon the plaintiffs protested, and were now brought into court to be impounded for the defendant's use.

In this state of the proof, the defendant called upon the presiding judge to instruct the jury, that the plaintiffs could not maintain the action, without restoring or offering to restore to the defendant, before bringing it, the money and note given to them in settlement of the bill of August 7, 1858, and the drafts upon Holbrook received by them in part settlement of that purchase, and in settlement of the purchases of September 17th and 30th of the same year. The judge refused this instruction, but ruled *pro formâ*, and for the purposes of this trial instructed the jury, that if they were satisfied, from the proof, that the goods, for which damages are

claimed by the plaintiffs, had been obtained from them by the false and fraudulent representations of the defendant, they might maintain this action against him therefor, without restoring or offering to restore, previous to the commencement of the action, the said money, note, or drafts, or either of them; and, so far as the goods purchased on the 7th day of August, 1858, were concerned, could maintain their action for the value of one half thereof without restoring or offering to restore to the defendant, at any time, the note and money received by the plaintiffs for the other half of said goods.

Under these instructions, the jury having returned a verdict for the plaintiffs for their damages, assessed at $1,396.25, the defendant now moved for a new trial, for errors of law in the above instructions, and in the admission of the evidence of other fraudulent representations than those made to the defendant.

The motion was argued upon briefs, which were not handed to the court until this term.

*Payne*, for the defendant, abandoned the ground of the motion founded upon the admission of evidence of other false and fraudulent representations, for the purpose specified, than those made to the plaintiffs, as settled by authority; but contended that the presiding judge erred in instructing the jury, that the plaintiffs could maintain this action, which proceeded upon the idea of a rescission of the contracts of sale, without restoring, or offering to restore, before commencing the action, the money, drafts, and note received from the defendant, or without at any time restoring, or offering to restore, the money and note. 2 Parsons on Contracts, 277; *Kimball* v. *Cunningham*, 4 Mass. 502; *Conner* v. *Henderson*, 15 Ib. 319; *Miner* v. *Bradley*, 22 Pick. 457; *Thayer* v. *Turner*, 8 Met. 550; *Martin* v. *Roberts*, 5 Cush. 126; *Cook* v. *Gilman*, 34 N. H. 560; *Ketletas* v. *Fleet*, 7 Johns. 324; *Voorhees* v. *Earl*, 2 Hill, 288; *Masson* v. *Bovet*, 1 Denio, 29; *Hunt* v. *Silk*, 5 East, 449.

*Eddy*, for the plaintiffs,

To the admissibility of other similar false and fraudulent representations, made at or about the time of those made to the plaintiffs, for the purpose of proving the design of the latter, cited 1 Starkie on Ev. 15, 18, 19, 352, 465; 1 Phillips on Ev.

116–139, n., 333, 352, 452, n., 465; 1 Greenl. on Ev. § 53, p. 74, and cases cited; *Rowley et al.* v. *Bigelow et al.* 12 Pick. 307; *Gardner* v. *Preston*, 2 Day, 205; *Allison* v. *Mattieu*, 3 Johns. 235; *Seaver* v. *Dingley*, 4 Greenl. 230; *McKinney* v. *Dingley*, Ib. 306; *Cary et al.* v. *Hotailing et al.* 1 Hill, 311; *Hall* v. *Naylor*, 4 Smith, Court of Appeals, 588.

To the point that the restoration, or offer to restore the drafts, before the action, or the note and cash at any time, in trover for goods obtained by a fraudulent purchase, was unnecessary, he cited *Ladd* v. *Moore*, 3 Sandf. Sup. Ct. R. 589; 2 Parsons on Contracts, 277; *Frost* v. *Lowry*, 15 Ohio, 200; *Pierce* v. *Wood*, 3 Foster, 520; *Martin* v. *Roberts*, 5 Cush. 126; *Levens* v. *Austin*, 1 Met. 557; *Poor* v. *Woodburn*, 25 Verm. 234.

AMES, C. J. The first ground for new trial set down in this notice has been abandoned at the argument; and, indeed, it cannot be doubted, both upon principle and authority, that evidence of similar false and fraudulent representations made by the defendant to others, at or about the time such representations were made to the plaintiffs, and for a like purpose, is admissible to show, that the latter representations were not casual or misunderstood, but were made with design, and in furtherance of a fraudulent scheme directed against others as well as the plaintiffs. The well known rule admitting other instances of the prisoner's passing counterfeit bank bills, in order to show that he *knowingly* passed those for which he is indicted, is a sufficient warrant for this; and has been extended by this court to the admission of evidence that the prisoner, at or about the same time, passed *spurious* bank bills, for the purpose of proving the *scienter* in his passing the particular *counterfeit* bank bill charged in the indictment. *State* v. *Brown*, 4 R. I. 528, 538, 539.

The other questions raised by the motion are of more difficulty, and demand a more extended consideration.

The right of a party who has been deprived of his property by fraud in the guise of a contract of sale, to avoid the contract, whether executory or executed, is an important practical right; and in his pursuit of it, whether at law or in equity, he should be defeated or delayed by no technicalities, and embar-

rassed by no empty ceremonies. To retake his own from the wrongdoer, with or without legal process, as the circumstances of the case may justify or require, or if it be sold or secreted, to be able promptly to direct against him the most stringent remedy for damages, is what he may demand as accordant with the spirit of all civilized jurisprudence. The substantial rights even of a fraudulent person proceeded against should, undoubtedly, be respected; but beyond this, little form or ceremony need be used towards him to compel him to disgorge his ill-gotten gains. If the person defrauded, after obtaining knowledge of the fraud, either by express binding agreement or by his conduct, ratifies the contract fraudulently procured from him, it is his right to do so; and having done it, he must be deemed to have waived all remedy for the fraud. If there has been no such waiver, he, nevertheless, should not be permitted to rescind the contract on his part, without a substantial restoration to the other party of all that he has received by virtue of it. He may not have replevin or trover for his goods, which actions proceed upon the idea of the rescission of the contract of sale, but will not, therefore, be without legal remedy for the fraud practised upon him; but may have an action for deceit, which proceeds upon no such notion. But why should the injured party be deprived of any remedy which the law gives for such a wrong, because he has not performed an useless ceremony?

We ask this question in application to the defendant's ground, that this action is not maintainable against him, because the plaintiffs did not, prior to its commencement, restore or offer to restore to him the drafts accepted by Holbrook. Now the evidence finds, that these drafts were, at the time the action was brought, if not before, utterly worthless; the defendant, the drawer, and Holbrook, the acceptor, being without visible means of payment or any property whatsoever, and greatly insolvent. There is no pretence, in fact, that the defendant has been injured by keeping them back; and they were brought into court at the trial, and are now impounded for his use, with as much value attached to them as they ever possessed. It appears, therefore, that the defendant insists in his defence, that a wholly useless ceremony has not been performed with

regard to them.   Undoubtedly, his substantial rights ought not to be sacrificed by the omission on the part of the plaintiffs, of any act in the rescission of the contract which is necessary to secure them ; but with what face can he claim, as a bar to sub-stantial justice, that mere forms and ceremonies have not been practised towards him ?   It is in our judgment quite enough that he should not be really prejudiced by the rescission of the sale which his fraudulent representations procured; that to do the plaintiffs justice, no injustice should be done to him.

Where, indeed, a contract of sale is rescinded under some term contained in it, or from some unexpected failure of con-sideration, or mere breach of its conditions, the general rule is, that to enable one party to treat it as rescinded, he must first return to the other all that he has received by virtue of it.   But the rule, even in such cases, does not apply to things merely col-lateral to the contract and subject of sale; so that in *Wilkinson* v. *Lloyd*, 7 A. & E. (N. S.) 27, which was assumpsit to recover the price of certain shares in a coal company, the transfers of which, the directors of the company, under a clause in its deed of settlement, refused to sanction, it was held, that although the defendant had a right to require the redelivery of the trans-fers to him, yet that the return or cancellation of them was not a condition precedent to the maintenance of the action.   Now, the drafts drawn by the defendant, and by him accepted, were not the consideration stipulated for the liquors sold to the de-fendant; that was so much money, the drafts being merely security for its payment; so that when the drafts became due and were unpaid, the plaintiffs might sue for the price of the liquors, bringing the drafts into court to be impounded, in the event of judgment, for the benefit of the defendant.   It would be difficult to distinguish this case, upon principle, from the case of *Wilkinson* v. *Lloyd*, within the most rigid requirement of tender before action, applicable to cases of the rescission of contracts on account of an honest failure of consideration.

But we do not hold that the rigid rule of tender before action, known to rescission under and by virtue of a contract, applies to cases of the avoidance of a contract on the ground of fraud. In the former case, the pursuing party is dealing with one pre-

41 *

sumed to be honest, and can afford to wait — in the latter, with one who has defrauded him in the very matter of the suit; and he should be delayed by no useless ceremony in the way of the prompt recaption of his goods, or of the service of his writ in a suit for damages for the tortious conversion of them. Such a condition to a remedy in such a case is wholly unknown in courts of equity, where cases of rescission or cancellation of contracts on the ground of fraud usually come; the court deeming it quite sufficient to provide that justice be done to the injurious, as well as to the injured party, by its own action. Adams's Equity, 171, and cases cited. No good reason can be given why, when courts of law deal with the rescission of contracts on the ground of fraud, they should not do so, so far as the nature of their remedies will permit, upon the same footing with courts of equity. This was both the view and course of Lord Alvanley, when sitting as a law judge in a case of the rescission of a contract from failure of consideration which was brought before him. *Johnson* v. *Johnson*, 3 B. & P. 162, 169, 170. So far as the drafts in question are concerned, this is easily done, and in accordance with well-known legal analogy, by requiring them, instead of being tendered before action, to be brought into court at the trial, and impounded for the benefit of the defendant.

The case of *Ladd* v. *Moore*, 3 Sandf. Sup. Ct. R. 589, is in entire accordance with these views. In that case the plaintiffs, who had been defrauded by false representations with regard to the property of the defendant, into selling him some four hundred and eighty dollars' worth of silver ware, for which they received from the defendant two hundred dollars in cash, and his promissory note at sixty days for the balance, upon the discovery of the fraud, brought trover for the goods, without first tendering to the defendant the note, and without offering in court to return the two hundred dollars. The note having been brought into court at the trial for the use of the defendant, a motion to set aside a verdict for the plaintiffs, for the value of the ware, less the two hundred dollars paid, was refused, although there, as here, it was claimed that no such tender of money or note had been made. It is said by the counsel for

the defendant, that the facts of that case showed, that the plaintiff could not, upon search, find the defendant to make the tender before the action was brought. In their judgment, however, the court do not notice this fact as having any bearing upon the question of tender, but only upon the demand of the goods before action, as evidence of conversion. With regard to there having been no offer to restore the note before action, or the money at any time, the court say: "It is undoubtedly true, as a general rule, that a party who would disaffirm a contract, must return whatever he has received upon it. But, surely, they must be upon the condition, that the party returning shall thus restore himself to his own original position; else, in case of fraud, the party committing the fraud might, as in this case, place himself in a situation in which he could not restore, and yet the injured party shall have no redress, through a proceeding to arrest the person of the defendant, unless he restores all that he has received, and obtains nothing but a judgment, which, in a majority of instances, proves worthless. Most of the cases in which the rule is laid down relate to executory sales, and where, on the ground of failure to fulfil, the other party seeks to rescind. Few cases relate to transactions which are fraudulent and void. See *Voorhees* v. *Earl*, 2 Hill, 288, opinion of *Cowen*, J., and cases cited. Suppose, in this case, the plaintiff, before suit brought, had found the defendant, and had tendered to him the note and the two hundred dollars, and demanded the return of the property, which had been refused, he certainly would not have been obliged to leave the note and money with the defendant before he could proceed in trover against him. Upon the trial, the plaintiff was, certainly, not obliged to do more than he would have been before the commencement of the suit, except as to the note. On the trial, he must tender the note, because that is merged in the judgment; and being transferred, might otherwise have been held by *bonâ fide* holders, and the defendant thus be made twice liable. But, on the trial, there was no pretence that the defendant had the silver ware in court to return to the plaintiff, on recovering his note and the two hundred dollars. If he had been solicitous

upon this subject, he might have brought in the property and tendered it, and if the plaintiff did not voluntarily consent to receive it and return the note and money, the court would most probably have made an order, by which judgment would not have passed against him. Selwyn's N. P. 1303, 1304; 7 T. R. 53. But says *Cowen,* J., in *Voorhees* v. *Earl,* speaking of the rule where a party desires to rescind, he need do so *in toto;* " even in a case of fair sale, the rule is not universal. We do not think that it can or ought to be applied to this case. Ib. 392, 393."

In the case at bar, as well as in the case just cited, the defendant had, long before the action, disabled himself from restoring the goods of the plaintiffs; having sold and shipped them to Holbrook, as he himself swears, so that out of the proceeds Holbrook might be enabled to meet these very drafts which were turned over to the plaintiffs.

In *Thurston* v. *Blanchard,* 22 Pick. 18, the supreme court of Massachusetts held, that the vendor need not tender or return before action, the vendee's due note, and in *Frost* v. *Lowry,* 15 Ohio, 200, the supreme court of Ohio, that he need not tender or return the accommodation acceptance of another given for goods sold under fraudulent misrepresentations, in order to maintain trover for his goods against the vendee; it being sufficient that the note or draft had never been negotiated, and was produced at the trial and offered to be surrendered and placed on the files for the defendant's use. The reason given is, that the defendant could not be prejudiced by the want of such previous tender; and the rescission of the contract of sale rescinded the note or contract of payment by the vendee.

In *Poor* v. *Washburn,* 25 Vt. 234, which was replevin for goods procured by purchase through fraudulent misrepresentations of the purchaser as to the value of the note of a third person given in payment for them, *Redfield,* C. J., in noticing that there had been no tender of the note to the defendant before action, says: " If the plaintiff has parted with the note, he could not return the property, even when he proved the most unequivocal fraud, and *upon the trial* he should be required to furnish the note;" and again, " As the vendor would clearly not

be required to surrender the securities until he could obtain a surrender of the goods, the mere form of offering the note in exchange for the goods would seem very idle."

Even in the case of *Coolidge* v. *Brigham*, 1 Met. 547, cited for the defendant, the court, though holding that the note of a third person should be returned before commencing an action founded upon the rescission of a sale on the ground of fraud in the purchase, after noticing that the note, which had upon it two forged indorsements, was not proved, so far as the maker was concerned, to be worthless, say, " It is true that eventually the note may become of no value, either by the death or insolvency of the maker, or otherwise; but this possibility does not excuse the plaintiff from not returning the note. He must, if he undertakes to rescind the contract, either restore the note, or prove clearly that in no event can it be of any value. This he has failed to do, and cannot, therefore, be allowed to treat the note as a nullity." Ib. 550. Now, without adopting the decision in this case as a proper application to it of the law respecting the rescission of contracts on the ground of fraud, unless, indeed, upon the supposition of the counsel for the plaintiffs, that the vendor did not offer at the trial to restore the note, yet, as we understand the judgment of the court, they would have deemed the prior tender of the note unnecessary, if the note had been proved to be worthless through the *present* insolvency of the maker of it. In this view of the decision, it cannot help the defendant in the case at bar; the proof showing that both the defendant, the drawer, and Holbrook, the acceptor, of these drafts, were insolvent.

It is further objected, however, to the defendant's right to rescind the sale of August 7, 1858, that neither before commencing this action, nor at the trial, did the plaintiffs restore, or offer to restore, Franciscus' note for two hundred and seventy-five dollars, nor the cash, three hundred and thirty dollars and fifty-one cents, both received from the defendant for Silsbury's half of the purchase, though they offered, at the trial, to restore Holbrook's acceptances, received for the other half.

The evidence clearly showed, that Silsbury was the purchaser of one half of the whiskey embraced in the contract of sale of

that date, dealing personally with the plaintiffs for his share of the purchase, and separately arranging with them, and, by the hand of the defendant, actually paying them for his half thereof in the cash and note in question. This payment discharged Silsbury from all responsibility to the plaintiffs; and it is apparent, that it was only for convenience in entering the transaction in the plaintiffs' books, that the whole purchase was at the defendant's suggestion, charged to him, and he, on the other hand, credited with the note and cash, in reality, through him, received from Silsbury. With what justice can the defendant then claim that the plaintiffs should restore to him this note and cash. Looking behind the mere form of the transaction, at its substance, it is evident that the credit to the defendant was merely for one half the purchase, the other half having been paid for by Silsbury. If the note and cash were to be returned to any one, it should be to Silsbury, from whom they were received. *He* cannot, however, claim them, since he received for them all the value for which he stipulated; and the defendant, certainly, cannot, since in handing them to the plaintiffs he acted only as Silsbury's agent, in carrying out Silsbury's contract, made personally with the plaintiffs. The verdict of the plaintiffs, embracing only one half of this purchase, being the half covered by Holbrook's drafts, the defendant has no cause to complain.

But even upon the defendant's view of the transaction of August 7, that the purchase and settlement by note, cash, and drafts, were, as between him and the plaintiffs, made by him and not by Silsbury, we do not see upon what grounds of justice the plaintiffs should, because they have received, as stipulated, payment at the time for one half of the purchase, be precluded from retaining this payment, and yet avoiding the other half, in the payment for which they have been defrauded. By originally receiving the note and cash, they cannot be said to have ratified the fraudulent contract, since they did not then know of the fraud; and, as suggested in *Ladd* v. *Moore, supra,* it would be a singular application of the equitable notion, that upon the rescission of a contract *both* parties should be restored to their condition prior to it, to require the plaintiffs, who, in

retaining this note and cash, retain only what they are entitled to by their contract, to give them up to the fraudulent purchaser for the doubtful, or rather desperate, chance of getting their value, and something more, back again, in the shape of damages in trover. We should reject the whole spirit of the rule of rescission, if, in thus applying it, we clung to the letter, in which, without qualification and in other applications it is sometimes expressed. If, indeed, the plaintiffs had been warranted in retaking, and had actually retaken upon replevin, all the goods embraced in the sale of the 7th of August, they could not, in justice, be permitted to retain them without restoring the note and cash given for them by way of part payment; but we can see no reason why they should not retain their verdict for damages against the defendant, for that portion of their goods out of which he at that time defrauded them.

This motion must, upon all the grounds stated in it, be denied, and judgment be entered upon the verdict.