HENRY ROYCE, Respondent, *against* CHARLES WATROUS *et al.* Appellants.

(Decided March 5th, 1877.)

Where, upon the plaintiff's motion, a verdict has been directed against the defendant, to which the defendant has excepted, the facts to be considered in determining the propriety of that direction, are those specifically proven by the evidence for the defendant and those which may be reasonably inferred from that evidence, and if such facts contradict plaintiff's evidence and constitute a defense, the question of fact should be submitted to the jury.

It is a defense to an action by a vendee for damages for non-delivery, that the vendee and a confederate were engaged in the attempt to obtain the sale and delivery of the goods for promissory notes of a third party known to them to be worthless, although the vendor, who discovered the fraud during the attempt, allowed the sale but not the delivery to be consummated, and with the intent only of securing possession of the notes as evidence of attempted fraud;—if such vendor at the trial tenders back the worthless notes.

Appeal by the defendants from a judgment of this court entered upon a verdict for plaintiff, directed by Judge JOSEPH F. DALY, at trial term, and from an order made by him, denying a motion for new trial.

The facts are stated in the opinions.

*Sheldon & Brown*, for appellants.

*Douglass Campbell*, for respondent.

CHARLES P. DALY, Ch. J.—In my opinion this was a case for the jury. As the plaintiff Royce was contradicted in the most material parts of his statement of what occurred between himself and the defendants, the jury were entitled, if they believed the defendants' testimony, to discredit the whole of Royce's evidence ; to disbelieve his statement that he bought the notes of Van Horne at a discount of 10 per cent., agreeing to pay for them out of commissions to be thereafter earned upon sales of lumber which he might make for Van Horne. Disbelieving his statement in this respect, the jury would have been warranted in concluding that the

whole transaction was a contrivance by Van Horne to get lumber for Farnham's notes, Van Horne knowing that Farnham was embarrassed, and that his notes would not be paid when they matured; in carrying out which scheme, Royce, who was Van Horne's clerk, and irresponsible, acted as Van Horne's instrument.

The judge having ordered a verdict for the plaintiff, he must be regarded as ruling that the plaintiff was entitled to recover, even upon the case as presented by the defendants' testimony, and in view of any inferences which a jury might legitimately draw from the defendants' testimony, or from the whole of the evidence in the case.

The case, as presented by the evidence, assuming Royce's testimony to be untrue wherever he is contradicted by the defendants' witnesses, discloses this state of facts. Van Horne held three notes of Farnham's which had not matured, and knew that Farnham was embarrassed; the fact being that Farnham had then stopped payment and his notes had been protested. Royce was Van Horne's clerk, at a salary of $20 a week, with commissions upon any lumber he might sell for his employer, and was an irresponsible person, being unable to pay his debts. Royce, who was wholly unknown to the defendants, came to their lumber yard on Oct. 4th, 1875, at about 8 o'clock in the morning, and inquired for certain kinds of lumber, which were shown to him, and the prices stated, to which he made no objection. He asked the defendant Wilson if he would take Farnham's notes in payment, and Wilson answered, that if Farnham came there to buy lumber he would take his notes in payment, but this was an irregular proceeding, and he should want to inquire further. He asked Royce how he came to buy the notes, and Royce answered, that Farnham was indebted to him for lumber which he had sold to him, and that he would give him (Royce) his notes in settlement. Wilson then asked Royce his name; and upon hearing it, said: "I thought you were a clerk of Van Horne's." Royce answered: "No, I have not anything to do with him." Wilson replied: "You were in Albany, buying lumber with him." To which Royce

answered : " That was a mere friendly act ; I went up there and assisted him, and he paid my expenses." Wilson then asked him what he wanted with the lumber, upon which he said : " I am buying and selling on commission ; that is my business ; I have a customer for this lumber." Wilson then told him he would inquire further and then let him know. Royce came again in the afternoon, but Wilson, not having made the inquiry, or, as he testified, not having had a report, Royce went away. On the same day, the 4th of October, Van Horne called upon Farnham, said he was in quite a hurry, and wanted him to exchange the notes that he, Van Horne, held, and give him other notes, extending the time of payment ; that he wished to send them to the West, and to make them payable to H. Royce (the plaintiff), who was not known to Farnham, and that he, Van Horne, would sur-render the other notes, the effect of which would be to give him, Farnham, more time to pay the notes. The two new notes, to the plaintiff's order, were accordingly given as requested, one of them being dated on that day, October 4th, and the other dated back September 15th. Van Horne then went away with the notes, but did not surrender the old ones, which he still holds.

Before Royce came for the last time, on October 4th, Wilson had made inquiries, and learned that Royce's statement, that the notes were for lumber for which Farnham owed him, was untrue, and also the falsity of his statement that Farnham was good. Wilson, finding that the object of Royce was to defraud him, by obtaining the lumber by false representations, took the two notes, being the notes which Van Horne had the same day obtained from Farnham, leaving Royce under the impression that the lumber would be delivered to him, but took them for the purpose of bringing the matter before a criminal court, Farnham having sent to him a request that the notes should be taken from Royce, and not used ; and the next day Wilson laid the matter before Judge Kilbreath, deposited the notes with him, and on the facts stated, Judge Kilbreath issued a warrant for Royce's arrest upon a criminal complaint, and the papers,

with the notes passed into the hands of the district attorney, in whose hands they appear to have remained until the trial in the Court of Sessions,' the plaintiff having afterwards been prosecuted, and a trial had, upon a criminal charge, before Judge Sutherland, upon which trial he was acquitted.*

The jury, I think, would have been warranted upon this evidence in concluding that Royce and Van Horne had confederated together to defraud the defendants out of the lumber, by giving in payment for it notes which Van Horne knew would not be paid, and that Wilson, in taking the notes, after being fully advised of the fraud which was intended to be practised upon him, did not take them in payment for the lumber, or as the consummation of a contract for the sale of it; but because he erroneously supposed that Royce would be liable to a criminal prosecution for the attempt to commit a fraud, which was not consummated, as the lumber was not, and never was meant to be, delivered. It was not, in my judgment, a contract made by the delivery of the notes, as the intent of Royce in giving them, or more correctly the mutual design of Van Horne and Royce, was, by their delivery, to perpetrate a fraud upon the defendants; and the intention of Wilson, in taking them with the full knowledge of the fraud that was contemplated, was not to make a contract for the delivery of the lumber, but to get them into his possession, at Farnham's request, as evidence upon which to found a criminal complaint against Royce.

Where a party has been induced by fraudulent representations to make a contract of sale, and has delivered the property sold to the fraudulent vendee, receiving from him notes of a third person in payment of the amount, he cannot rescind the contract and sue the vendee for the goods sold, without returning or offering to him the notes (*Baker* v. *Robbins*, 2 Denio, 136); but in frauds of this kind, where nothing is parted with by the fraudulent vendee but his own promissory notes, such return or offer to return before suit brought,

---

* On the trial in this court the notes were produced by the defendants and tendered to the plaintiff.

is not necessary ; it is enough if the notes are produced upon the trial, ready to be canceled (*Nichols* v. *Michael*, 23 N. Y. 267), the principle or rule being, that in case any money or property has been received under the contract, the money or property thus received must be restored before there can be any disaffirmance of the contract ; because a party cannot both repudiate a contract and at the same time insist upon retaining its fruits or benefits. (Per HOGEBOOM, J., in *White* v. *Dodds*, 42 Barb. 561.)

This was not a case, however, in which a vendor seeks to rescind a contract upon the discovery afterwards of the fraud, but in which the alleged fraudulent vendee brings an action to recover damages for the non-delivery of the goods, and if, as the jury may have found, his design, and that of his employer, was to cheat and defraud the defendants, it is nevertheless claimed that the action may be maintained, because the defendants took the notes, and did not offer to return them until the day of the trial. In my opinion, a tender or offer of them upon the trial, in such a case, was sufficient. The defendants were not asking to enforce any right. They were brought into court by a fraudulent vendee to recover damages from them, because they would not deliver the goods when they knew before delivery that his design was to defraud them. In such a case, it is not inapt to quote the language of Beardsley, J., in *Masson* v. *Bovet* (1 Denio, 74), in respect to the rule that what has been received by the defrauded party should be returned. He says : " This is not exacted on account of any feeling of partiality or regard for the fraudulent party. The law cares very little what his loss may be and exacts nothing for his sake. If, therefore, he so entangles himself in his own knavish plot that the party defrauded cannot unloose him, the fault is his own ; and the law only requires the injured party to restore what he has received, and, as far as he can, undo what has been done in the execution of the contract. This is all that the party defrauded can do, and all that honesty and fair dealing requires of him. If these fail to extricate the wrong-doer from the position he has assumed in the execution of the contract, it is in no sense the fault of his in-

tended victim; and upon the principles of eternal justice, whatever consequences may follow, they should fall on the head of the offender alone."

The defendants erroneously conceived when they took these notes that they were discharging a public duty, by getting into their possession the evidence of what they supposed to be a criminal offence; and the fact that they did so, shows that there was no intention on their part to make a contract. The fact that they made a complaint before a criminal magistrate the following day, and had the plaintiff arrested; placing the notes in the hands of the magistrate, was an immediate and direct repudiation of any contract, of which the plaintiff was fully advised; and will the law, under such circumstances, make a contract for them? Nothing is better settled than that no title passes where the vendee, by means of fraudulent representations, with intent to cheat the vendor, obtains goods upon credit, giving his own notes, or the notes of others equally valueless, in payment. (Hilliard on Sales, pp. 432, 435, 436, 3d Ed.) It is at the election of the vendor, if he thinks proper, to hold him to the contract; but the whole transaction being void *ab initio* as respects the vendee, the vendor may recover back his property, upon returning or offering to return what he has received. But, as I have said, this is not such a case.. It is an action brought to recover damages for the non-delivery of the goods, by a party who never acquired any title to them, if, as the jury may have found, his design was to cheat and defraud the defendants;—to induce them, by fraudulent representations, to part with their property for notes which he knew could not be paid.

Intending to defraud, what right could he have to bring an action for damages because he did not succeed in his scheme; and if he brings such an action, what right would he have to complain, if, upon the trial, the instruments with which he meant to defraud are given back to him. Both he and the maker of the notes are insolvent, and were so when the notes were made; and as respects Van Horne, who obtained them, the notes are past due, and Van Horne holds

the original notes of which they were a renewal, never having, as he promised, surrendered the former ones to Farnham. The original notes, which are greater in amount than the two notes given in renewal, are still in Van Horne's possession, and Farnham remains liable upon them, the notes given in extension having matured. Farnham, in fact, is the only one that could be injured, by having given two sets of notes for the same amount. But he makes no complaint. On the contrary, it was at his request that the defendant took these two notes from the plaintiff.

The reason of the rule, that a defrauded vendor must return or offer to return the note of a third person, where he means, upon discovering the fraud, to rescind the contract, is that the vendee may have whatever benefit he may derive from the repossession of the note, the vendor having elected to repudiate the contract, which repudiation gives him the right to repossess himself of his goods, unless they have passed into the hands of an innocent holder for value. This reason does not apply in this case ; for the vendee, Royce, was in as good a position when the notes were offered to him on the trial, as he would have been if they had been returned to him before he brought the action ;—for the maker of the notes, Farnham, was insolvent when he gave them, at Van Horne's request, and the notes have never since been collectible. Farnham swore expressly that they had never been collectible since they were made, and were not then, on the day of the trial, worth anything. The plaintiff, therefore, as I have said, was in as good a position when the notes were offered to him at the trial as he could have been by the possession of them at any time previously ; and, in my opinion, a tender of them then was sufficient, and accomplished every purpose which the law has in view in requiring the vendor to return what he has received. In *Duval* v. *Mowry* (6 R. I. 479), which was an action of trover, it was distinctly held, where the acceptances of a third person had been received by the defrauded vendor, that a tender upon the trial was sufficient, the drafts being overdue and worthless by the insolvency both of the vendee and of the acceptors, and that

in such a case to require a tender before suit brought, would, to be exact, be an idle and useless ceremony. (And see to the same effect *Thurston* v. *Blanchard*, 22 Pick. 18; *Poor* v. *Woodburn*, 25 Vt. 234.)

The case derives no additional weight from the fact that money was deposited by Royce in the hands of the paying teller of the bank, who was an acquaintance of Royce's, for the payment of the notes, had they been presented for payment when due, being payable at the bank. Van Horne and Royce knew very well that they would not be presented, the notes being then in the possession of the criminal authorities. The money was not deposited in the bank to the credit of Farnham, the maker of the notes; for if it had, it might have been applied to their payment. Nor was it deposited to Royce's credit, but simply put in the hands of the paying teller, who was an acquaintance, as an ingenious contrivance to show that it was the design of Royce, as the indorser, to pay the notes when they fell due, which he or Van Horne knew very well might be safely done, there being no probability of the notes being presented, when they matured, at the bank for payment in the ordinary course of business. In any aspect of this case I think it was a case for the jury. Their finding might not have been conclusive, but I do not think that the court could take it away from them and hold, as matter of law upon the evidence, that the plaintiff was entitled to recover. I think, therefore, that there should be a new trial.

LARREMORE, J.—I concur with the chief justice in ordering a new trial in this action. When the notes in dispute were given, and up to the date of trial, Farnham (the maker thereof) was insolvent; and plaintiff when he indorsed them "*was not worth anything.*" *Prima facie*, upon the testimony of both maker and indorser, the notes were worthless, and the tender of them upon the trial, in a suit by the indorser *as vendee* to recover damages for breach of the contract for which said notes were given, was, in my judgment, a substantial compliance with the law. The relations that existed between the plaintiff and Van Horne; the

representations and negotiations by the latter in obtaining the notes, taken in connection with Farnham's testimony, raised a question as to the good faith of the transaction, the determination of which should have been left to the jury.

ROBINSON, J., dissented, on the grounds that the plaintiff's representations had not been relied on by the defendants, and that the defendants had not offered or proposed to rescind the contract or return the notes except on the trial. and also on the ground that there was no evidence upon which the plaintiff could be held responsible for any false representation of any material fact.

Judgment reversed. *

* The decision here was affirmed by the Court of Appeals, March 26th, 1878.
§ See sec. 1309 of the new Code of Civil Procedure.