*THE SARATOGA & SCHENECTADY RAIL ROAD COMPANY vs. ROW    [ *74 ]
and TREDWAY.

Where a contract is made for work to be done at a stipulated price, and it is discovered before the work is commenced, that a *misrepresentation* has been made in respect to its value, the party engaging to do the work may repudiate the contract ; if he does not do so, but goes on and performs it, he can demand no more than the contract price.

THIS was an action of *replevin* for a quantity of coke, tried at the Schenectady circuit, in March, 1838, before the Hon. JOHN P. CUSHMAN, one of the circuit judges.

The plaintiffs, by their agent *John Costigan*, purchased 50 chaldrons of coke in the city of New-York, and at that place made a written contract on the 30th June, 1836, by which *Teall & Co.* agreed to transport and deliver the coke at the rate of $1,50 per chaldron, which price was to include the expense of transferring the coke from the cellar of the store, 125 Washington-street, N. Y. to the boat, and unlading the same at Schenectady. A boat load of the coke, amounting to about 35 to 40 chaldrons, arrived at Schenectady on the twelfth day after the date of the contract. The defendant, *Row*, was the captain of the boat, and refused to deliver the coke to the plaintiffs, except upon the payment of charges amounting to a considerable sum beyond the contract price. The plaintiffs offered to pay, at the contract price, and demanded the property. *Row* stored the coke with the defendant, *Tredway*, after he had been fully informed of the contract, and of the tender and demand. The plaintiffs thereupon replevied the property.

The defence set up by *Teall & Co.* for the defendants, was, that the cellar of 125 Washington street was further from the water than *Costigan* had represented at the time the contract was made, in consequence of which the whole of the coke was not shipped—the boat being obliged to leave before

VOL. XXIV.                8

all could be got on board. *Buel,* who was the clerk of *Teall & Co.*
[ *75 ]  and made the contract on their behalf, was *the witness to make
out this part of the case. He said he was on the other side of the
city, half a mile from the coke, when the contract was made—that Costigan
asked him to go and see where the coke was—how near the water, before he
contracted, but he did not go. *Costigan* denied all misrepresentation.

The defendants insisted that Costigan had misrepresented the true loca-
tion of the coke, and that this had prevented a full performance of the con-
tract on the part of Teall & Co. The judge left the matter to the jury as
a question of fraud, and they found a verdict for the defendants. The
plaintiffs now move for a new trial.

*A. C. Paige,* for plaintiffs.

*M. T. Reynolds,* for defendants.

*By the Court,* BRONSON, J. How the jury could have found upon the
evidence that there was any fraud on the part of the agents of the plaintiffs,
I am at a loss to discover. But it is unnecessary to consider whether the
verdict is against the weight of evidence, for I am of opinion that the case
was not properly submitted to the jury.

The defendants refused to deliver the coke on being paid the contract
price for transportation, on the ground that the cellar in which the coke lay
in New-York, was a few feet further from the water than the clerk of *Teall
& Co.* thought it was at the time the contract was made. Not only the
street and the number were mentioned in the contract, but the clerk was in-
vited to go and look for himself before the bargain was concluded. But
waiving this consideration, and assuming that he was intentionally misled by
the representations of *Costigan,* though there is no evidence of that fact,
yet, after the bargain was concluded, and after *Teall & Co.* saw where the
coke lay, they elected to go on with the contract; and having done so, they
are bound by it in relation to the rate of compensation. *See Lloyd* v. *Brew-
ster,* 4 *Paige,* 537. If the alleged misrepresentation had related to some
other matter, and the truth had not been discovered until after the
[ *76 ]  performance of the contract had been *commenced, a different
question would have been presented. But when a party has dis-
covered what he deems a fraud before he has entered upon the performance,
he must then decide whether he will stop short, or go on with the contract.
He cannot say this is a good contract for the purpose of authorizing me to
do the work, but it does not bind me in relation to the rate of compensation.
By going on, *Teall & Co.* affirmed the contract, and they and their agents
are bound by it. No case was mentioned, and none, I think, can be found,
which sanctions a different doctrine. If *Teall & Co.* acted under the con-

tract, that must then govern throughout ; if they rejected the contract, they then had the plaintiffs' goods without authority, and were entitled to no compensation for their voluntary services.

It is unnecessary to notice the other objections.

New trial granted.